# CHARLESTON.

## LAIDLEY *v.* KLINE, ADMX.

### February 23, 1875.

1. Generally, the personal assets of an intestate, so far as they have not been administered, should be administered under the direction of the court, and applied to the payment of the debts of the intestate, and in relief of the realty which descended to the legal heir in a suit or proceeding, to subject the realty to the payment of the debts of the decedent.

2. Although, under the legislation of this State, as contained in the Code, real as well as personal estate is made subject to the payment of the just debts of the intestate, still the realty which descended to the heir should not be decreed to be sold for the payment of judgment liens until resort is first had to the personal estate, so far as practicable, and without producing unreasonable delay.

3. The real estate of an intestate in no wise, and for no purpose, goes into the possession or control of the administrator, but the legal title to the same descends directly to the legal heirs, subject, of course, to the just debts of the intestate, in so far at least at the personalty falls short of paying the same.

4. A judgment obtained during the life of an intestate is a lien upon his lands in the hands of his heirs for the payment thereof, and is entitled to priority of payment out of the proceeds of the sale thereof over a simple contract creditor, who acquired no equal or superior lien for his debt upon the realty during the life of the debtor.

5. A judgment obtained by a creditor against the administrator is not a judgment lien on the realty of the intestate.

6. Generally the court should not decree the sale of the realty of an intestate to pay debts or judgment liens before the accounts of the administrator have been settled and the unadministered assets ascertained.

7. Unless the widow of the intestate elects, in a proper manner, to take the value of her dower in the real estate which her husband owned at his death, her dower should be assigned to her in the realty before sale thereof for the payment of the intestate's debts.

8. There being no privity between the personal representative and the party to whom the real estate has descended or been devised, a judgment against such personal representative is not even *prima facie* evidence against the heir or devisee.

9. The thirty-sixth section of chapter one hundred and twenty-five of the Code, so far as it relates to taking material allegations of a bill, or material allegations of new matter in an answer constituting a claim for affirmative relief, as true, should not be applied strictly, if at all, to the answers of infant defendants by guardian, *ad litem.*

10. When a commissioner in a case of a creditor's bill is directed by the decree of court to hear proof of debts against the estate of an intestate, and there are infant defendants whose lands are sought to be sold, and the commissioner reports debts or judgment liens against the land, it is the duty of the court to examine the vouchers and evidence upon which the report is based and see if they are properly proven and their existence established before confirming the report and directing a sale of the realty, whether there were exceptions filed to the report or not; upon the ground that there was no sufficient evidence before the commissioner establishing such debts or judgments. And if the court confirms such report in the absence of sufficient evidence to establish the existence of such debts or judgments, and decrees the sale of the realty, the appellate court will reverse such decree for that reason.

Appeal and *supersedeas* granted on the petition of Elizabeth Kline, admx. of D. H. Kline and the infant children and heirs of said D. H. Kline, to wit: Edwin B., Sally S. and Daniel H. Kline, by John A. Warth, their guardian *ad litem*, from certain decrees of the circuit court of Kanawha county, rendered in a suit therein pending, wherein James M. Laidley was complainant, and the petitioners and Belle, William M. and Mary Jane Kline, adult children of said D. H. Kline, and others, were respondents. The material facts appear in the statement of the case by the Court.

The Hon. James W. Hoge, judge of said circuit court, presided at the hearing below.

1875.
January Term.

Laidley
v.
Kline, Admx.

*Smith & Knight* and *John A. Warth*, for the appellants.

*James H. Nash* and *Charles Hedrick*, for the appellee.

HAYMOND, PRESIDENT:

The plaintiff filed his bill in the circuit court of Kanawha county, in August, 1870 against Elizabeth Kline, the widow and administratrix of Daniel H. Kline, deceased and Bell, William M. and Mary Jane Kline, who are adults and Daniel H., Edwin B. and Sally Kline, infant children and the legal heirs of said decedent and others. The plaintiff alleges in his bill that the decedent, at the time of his death, was indebted to him in considerable sums of money for a portion of which, he has obtained judgments at law against the administratrix; to another portion the administratrix plead the statute of limitations and thereby defeated his recovery; that the judgments obtained by him against the administrator are as follows, viz: $339.30 with interest from the 11th day of April, 1870, and $23.23 costs, and $1,296.95 with interest from the 11th day of April, 1870, and $23.58 costs; that on these judgments writs of *fieri facias* were issued and placed in the hands of the sheriff of said county and returned "no property found—;" that at the spring term, 1858, of the circuit court for said county, he obtained a judgment, in the name of Lewis Ruffner, against said decedent, Moses Norton and Thomas J. Buster for $264 to be discharged by the payment of $134.97, with interest thereon from the 25th day of January, 1858, and $5.90, costs of suit; that this judgment was rendered on a forthcoming bond and the bond had been assigned by Ruffner to plaintiff for valuable consideration; that said decedent was the principal debtor in said bond and the others, against whom said judgment was rendered, were securities; that several writs of *fieri facias* were issued on said last named judgment and returned "no property found;" that he (plaintiff) has subsisting causes of action against decedent upon which suits are now depending in

the said circuit court and if judgments should be ren-

dered for him exhibits thereof will be filed—plaintiff
charges that decedent left very little personal estate, per-
haps not more than sufficient to pay his funeral expenses,
but that he was seized of several valuable tracts of land;
that the lands are subject to the liens of judgments ren-
dered against the decedent in his lifetime, and after sat-
isfying the same are liable to the other debts of dece-
dent, plaintiff also prays that a commissioner of the said
court state and report an account of the debts of the de-
cedent showing their several priorities, and also showing
of what lands the decedent died seized, and that the lands
so far as may be necessary to satisfy the debts of the de-
cedent be sold to satisfy such indebtedness. Said Ruff-
ner, Buster and Norton are also made defendants to the
bill.

Ruffner filed his answer, admitting the assignment by
him to plaintiff, of the judgment for $134.97 mentioned
in the bill.

Afterwards, the defendants, Belle, William and Mary
J. Kline, filed their answer to the bill. This answer was
filed on the 7th day of November, 1870. The defendants
last named, in their answer, admit the death of their
father, and that he died intestate, leaving Elizabeth
Kline, his widow, who, after his death, qualified as his
administratrix, and that they and the infant defendants
are the heirs at law of said decedent. They deny that
decedent was in anywise indebted to plaintiff at his
death. They admit that plaintiff did obtain the two
judgments at law in the bill mentioned, against said ad-
ministratrix, but they deny that the claims for which the
said judgments were obtained, or any part thereof, were
justly due from the estate of decedent to complainant.
They deny that said judgments against the administra-
trix bind the heirs of decedent, or the realty which de-
scended to them. They insist that plaintiff should estab-
lish the claims, for which the judgments were rendered, in-
dependent of the judgments, as much as though the same

1875.
January Term.

Laidley
v.
Kline, Admx.

were never rendered. They insist that the heirs are entitled to all the defences thereto which might have been made by the administratrix. They aver all judgments mentioned in the bill which were obtained in the lifetime of decedent, were fully paid by decedent before his death. They rely upon and plead the statute of limitations to the claims on which the judgments against the administratrix were obtained. And they aver that one of the said judgments, last named, was obtained against the administratrix on the assignments of judgments that had been refunded to plaintiff by decedent during his life, and that, in fact, the consideration paid for said assignment, by plaintiff, was only nominal. And they aver that Warth and English, who owed the judgments, were, at the time of the pretended assignment, notoriously insolvent. They also aver that the judgment obtained against the administratrix on the note of D. H. Kline, that matured after his death, was wrongfully obtained &c.; and that on the 21st day of June, 1855, decedent and plaintiff settled in full, as appears from the statement filed with their answer marked "A.," which statement is wholly in the handwriting of plaintiff. They also aver that decedent, at said settlement, assigned to plaintiff an interest in a large claim he then held against Warth and English, secured by a deed of trust on their lands ; that afterwards decedent paid and satisfied to plaintiff the sum so secured to him ; and as evidence of the fact, they file a paper in writing marked "D.," as part of their answer, which paper, they aver, is wholly in the handwriting of the complainant, except the signature thereto which they aver is in the handwriting of decedent. And they further aver that decedent, during his life, at sundry times, since said settlement, paid plaintiff large sums of money which exceed all the pretended claims that plaintiff has at any time, since said settlement, had against decedent, a statement of which is filed with their answer marked "C." And they deny all matters charged in plaintiff's bill not in their answer expressly admitted, and require legal proof thereof.

Defendants, Buster and Kline, each filed their answers

in which they, in substance, say they have no knowledge of the judgment alleged in plaintiff's bill against decedent and them; but that if there is any such judgment it is against them as securities of decedent.

The infant defendants, Edwin B., Sally S. and D. H. Kline, answered the bill by their guardian, *ad litem*, John A. Warth. This answer avers that said infants are of tender age and know nothing of the pretended judgments and claims mentioned in plaintiff's bill; that they are advised that said pretended claims have been fully paid, and are barred by the statute of limitations; whereupon they pray the court to require strict proof from the plaintiff of all the many matters charged in said bill, and pray that their interest in the premises be protected.

On the 15th day of April, 1871, the cause came on to be heard on the bill, exhibits, the several answers of the defendants Ruffner, Norton, Buster, the answer of the infant defendants Edwin B. Kline, Sally S. Kline and Daniel H. Kline by their guardian *ad litem* and replication to said answers, and upon the joint and separate answer of William M. Kline, Mary J. Kline and Belle E. Kline, and the exceptions and special replication filed thereto by the plaintiff, and on the petition filed in the cause by A. M. Smith. And the court overruled the exceptions to said answer and ordered the same to be filed with the special replication thereto, and the court adjudged, ordered and decreed that the cause be referred to master commissioner John E. Kenna, with directions that he take, state, and report an account showing:

1st What judgments obtained against D. H. Kline in his lifetime still remain unsatisfied, and to whom the same belong.

2d What other debts, with the evidence of the same, still remain unpaid and unsatisfied, and when any judgment or other debt is claimed by any party to have been

1875.
January Term.

Laidley
v.
Kline, Admx.

paid, or to be barred by the statute of limitations, that he report the evidence produced by any party, tending to establish such defence, and particularly that he ascertain the state of accounts (exclusive of jndgments in decedent's lifetime), between the complainant and decedent at the time of his death treating the judgments against the administratrix as *prima facie* evidence only of their correctness.

3d. What personal estate unadministed remains in the hands of decedent's administratrix subject to the payment of such debts.

4th. Of what real estate the said D. H. Kline died seized within the jurisdiction of this court; what liens with other priorities there may be on the same, and where such real estate is located, with such other matters as any party to the suit may desire, &c.

The special replication of plaintiff is in effect a general replication and his exceptions to the answer of Belle Kline and others are unimportant and unnecessary to notice.

At a term of said court held on the 26th day of July, 1872, commissioner Kenna filed his report to which some six separate exceptions were filed by the counsel of decedent's heirs which exceptions having been argued and considered by the court, the court was of opinion that the report was not fully responsive to all the requirements of the decree referring the cause, nor as explicit as it might and ought to be, especially as to the settlement of the administration account of the personality. And without passing, specifically, upon the various exceptions the court recommitted said report and referred the cause to commissioner W. E. G. Gillison who was required to make the statements and accounts and report all the matters required by the former decree of reference to said Kenna; and in doing so that he use the depositions, vouchers and other proofs taken and reported by said Kenna, together with such other proofs as any party should present before him.

Afterwards, on the 7th day of November, 1872, commissioner Gillison presented his report and the same was ordered to be filed. To this report there were seven seperate exceptions filed by the counsel of defendants, one of whom is the guardian *ad litem* for the infant defendants.

Afterwards, at a term of said court, on the 9th day of November, 1872, the cause came on to be heard upon the report of commissioner Gillison, and upon the defendant's exceptions thereto, which exceptions the court overruled, and approved and confirmed the report. And thereupon the cause came on to be heard upon the papers theretofore read, orders theretofore made and proceedings had in the cause, and the court was of opinion that the lands of the decedent Kline ought to be sold to satisfy the judgments enumerated and reported by the commissioner, and in the order and classification set forth by him. And decreed that unless the administratrix of said decedent, or his heirs, or some one for her or them, "shall" within-thirty days from the date of the decree pay and discharge the several judgments reported by the commissioner, with interest on the amount of each judgment, as reported by the commissioner, from the 1st day of November, 1872, and the costs of the suit, including $30 allowed by the statute, and also $179.09, paid by the plaintiff in redemption of the decedent's lands, with interest from the 19th day of October, 1872, then Alexander T. Laidley and Charles Hedrick, who were appointed special commissioners for the purpose, were directed to sell at public sale, to the highest bidder, at the front door of the court house of said county of Kanawha, after advertising the time and place of making sale in some news paper printed and published in the county of Kanawha, the lands of the decedent which are described in the decree, and which are all the lands reported. In making the sale the commissioners are directed to require one-third of the purchase money, together with the costs of the

suit, &c., and sale, to be paid in hand, and for the residue to give a credit of six, twelve and eighteen months with interest. The commissioners are required, before receiving any money, to give bond in the penalty of $3,000, conditioned according to law, and to report their proceedings, &c.

I deem it unnecessary to notice the report of commissioner Kenna, in detail as it was not confirmed by the court and the decree last aforesaid is not predicated thereon.

But the decree is based upon the report of the commissioner Gillison, to which there are various exceptions filed. Commissioner Gillison reports first the judgments against D. H. Kline, in his lifetime, and in his recapitulation thereof he ascertains the aggregate amount thereof to be $5,147.62, as being still due and unpaid, and that the several judgments against Kline, deceased, aggregating that amount are liens upon the lands of said Kline which descended to his legal heirs, and which he describes in his report. He also reports the legal priorities of those judgments as he believes they exist. He then reports the two judgments of plaintiff against the administratrix of Kline as being liens on said land seventh in priority, and of equal priority, and he ascertains that they, together with the other judgments, including principal, interest and costs at law, amount to $7,191.66. He also says that he has "called on John A. Warth, Esq., the counsel for the administratrix, Mrs. Elizabeth Kline, and has been informed by him that no personal assets of the estate of said D. H. Kline, deceased, yet remained unadministered, and I do report: 4th," &c. He also reports that "James M. Laidley has laid before him two certificates of redemption issued to him by the Auditor of the State of West Virginia, with three receipts of the Treasurer of said State accompanying the same, from which it appears that he has redeemed two valuable portions of the lands aforesaid, and that the

sum paid by him for that purpose amounted on the 19th day of October, 1872, to $179.09, as will appear from said certificates and receipts filed in an envelope filed with his report marked R. He further says that "in as much as these lands would have been forfeited to the State on that day if they had not been so redeemed, I recommend and so report that in the event a sale of the said lands shall be had, the said sum of $179.09 be repaid to said Laidley out of the first moneys arising from the proceeds thereof," &c. It is also stated in the report that the action at law in which the plaintiff recovered his largest judgment against the administratrix, mentioned in the bill, was commenced on the 26th day of August, 1869. It is to be observed that in none of the decrees rendered in the cause by the court was the cause heard (so far as appears by the several decrees) as to the defendant Elizabeth Kline, the administratrix and widow of the decedent. The law expressly requires that the personal reresentative and widow in such case as this shall be made defendant. See chapter eighty-six of the Code. It is evident that the object of the Legislature in requiring the personal representative of the decedent to be made a defendant was that in so far as the personal assets had not been administered, they should be accounted for and properly administered under the direction of the court and applied to the payment of the debts and in relief of the realty which descended to the heirs. It is true as this Court has decided at the present term in the case of *Pecks v. Chambers, ante,* that a judgment creditor may apply to a court of equity at any time to enforce his judgment lien in the life of the debtor. But, although, under the legislation of this State, as contained in the Code, real estate, as well as personal, is made subject to the payment of the just debts of the intestate, still it is evident that it was the purpose and intent of the legislature that lands should not be sold from the legal heir to whom they descended for the payment of judgment liens until resort should be first had to the personal estate, so far as practicable, and

without producing unreasonable delay. The personal representative, by operation of law, becomes invested with the legal title to the personalty for the purpose of applying the same to the payment of the just debts of the decedent, and of paying the excess, if any, to the legal heirs, legatees, &c., as the case may be. The real estate of an intestate, in no wise and for no purpose, goes into the possession or control of the administrator, but the legal title to the same descends directly to the legal heirs, subject, of course, to the just debts of the decedent, in so far, at least, as the personalty falls short of paying the same. A judgment obtained during the lifetime of an intestate is a lien upon his lands, in the hands of his heirs for the payment thereof, and is entitled to priority of payment out of the proceeds of the sale thereof over a simple contract creditor who acquired no lien for his debt upon the realty during the life of the debtor. A judgment obtained by a creditor against the administrator is not a judgment lien on the real estate of the decedent in the hands of the heir. The obtaining of the judgment gives no additional affect to the debt as a lien on the realty. If the realty in the hands of the heir was sold under decree to satisfy a judgment lien in the first instance, without any resort to the personalty, the heir would be entitled to be reimbursed out of the personalty by the administrator, after the other debts, &c., are paid thereout. And "it is the course of a court of equity, generally, to decree in the first instance against the party who is ultimately responsible ; but this is done only when the parties are before the court at the time of the decree."

All the allegations of the bill in this case, not expressly admitted, are denied by answer. The allegations of the bill, as to the amount of personalty left by decedent, and which went into the hands of the administratrix are denied and there is no proof thereof. The commissioner did not settle the account of the administratrix, Elizabeth Kline, and it does not appear that it ever was settled. The fact that the commissioner was informed by

the attorney of the administratrix that no personal es-
tate of the decedent remained unadministered is not evi-
dence of the fact, and does not dispense with the neces-
sity of such settlement before a decree of the sale of the
realty for the payment of the debts.    Ordinarily, in the
absence of an inquiry and settlement of the accounts of the
administrator, the court cannot be sufficiently informed
as to the necessity or propriety of resorting to the realty
for the payment of debts.   Generally, therefore, it is
necessary and proper for a court of equity, before de-
creeing a sale of realty of the intestate to require the ad-
ministration account of the administrator to be settled,
and ascertain by and through such settlement the amount
of unadministered assets in the hands of the administra-
tor, which may be applied to the payment of the debts,
and whether it is necessary to resort to a sale of the re-
alty, or any part thereof, for that purpose.   In this case
no settlement of the administration account of the ad-
ministratrix, whatever, appears to have been made prior
to the said decree of sale, and under these circumstances,
it was error in the court to decree the sale of the land of
the decedent in the absence of such settlement.

The law requires the widow to be made a party to a
creditor's bill, that her rights and interests may be pro-
vided for and protected.   Unless she elects, in a proper
manner, to take the value of her life estate in the third
of the real estate of which her deceased husband died
seized, her dower should be assigned to her in the realty
before sale thereof for the payment of debts.   In this
case the court decreed the sale of all the lands of the de-
cedent, without having caused the dower of the widow
to be assigned to her according to law; and it does not
appear that she elected in any way to take the value of
her dower in money, or that any provision whatever was
made for her.   This was also error.

On a bill by a simple contract creditor against heirs
or devisees to marshal assets, there must be proof of the

1875.
January Term.

Laidley
v.
Kline, Admx.

justice of the plaintiff's claim. It will not be sufficient to produce a judgment at law against the executor. There being no privity between the personal representative and the party to whom the real estate has descended or been devised, the judgment against such personal representative is no proof as against the heir or devisee. *Mason's Devisees v. Peters' Admrs.*, 1 Munf. 437; *Foster v. Crenshaw's Exors.*, 3 Munf. 520; *Chamberlayne v. Temple,* 2 Rand. 396; *Shields, Admr., v. Anderson, Admr.*, 3 Leigh 736; 2d vol. Robinson's (old) Practice 89; 6 Gratt. 316; *Robertson v. Wright,* 17 Gratt. 540. The two judgments obtained by the plaintiff against the administratrix of Kline are not *prima facie* evidence against the legal heirs in this case of the plaintiff's debt and the justness thereof. The general rule at law is that the statute of limitations commences to run from the time the plaintiff's alleged cause of action against the defendant accrued, (that is, the right to sue accrued,) and when it once commences to run it does not stop, except for some cause shown which by law takes the case out of the operation of the general rule. It is true there are some exceptions to the general rule that the statute of limitations commences to run from the time the right of action accrued, as, for instance, provided by the sixteenth, seventeenth and eighteenth sections of chapter one hundred and five of the Code, and perhaps other exceptions. Courts of equity ordinarily follow the law upon this subject. The heirs of the decedent are entitled to the benefit of the statute of limitations as to plaintiff's claims set up in his bill, or any of them, so far as the time elapsed creates a bar to them, or any of them. The nature of the plaintiff's claims against the decedent at his death, or upon what they are based, or when they accrued, upon which said judgments against the administratrix are founded, are not stated in the bill. The plaintiff, in his bill, seems to rest his right to a recovery against the heir upon the supposed force of such judgments as evidence of the justness thereof against the legal heirs of

the decedent ; but, as we have seen, these judgments are
not even *prima facie* evidence of the justness of plaintiff's claims against the heirs to whom the land descended, and the circuit court erred in directing the commissioner to treat judgments against the administratrix as *prima facie* evidence of their correctness against the heirs; for that is the substance of the direction. The answer of the infant defendants, by their guardian *ad litem*, says they know nothing of the pretended judgments and claims mentioned in complainant's bill. It requires strict proof as to all money matters, &c., and relies upon the statute of limitations as to claims, &c. It is true that the answer does not expressly deny the existence of the judgments alleged by complainant in his bill, or any of them, but I apprehend the allegations of the bill as to the existence of said judgments, or any of them, and not denied expressly in the answer of the infants, cannot and ought not to be taken by the court as confessed by them for the purposes of this suit. It has always been held in Virginia, and in this State, that it was error to proceed to decree against infant defendants until they shall have answered by guardian *ad litem*. The policy of the law, and the rules and principles governing courts of chancery, has never been to take bills for confessed by infants for the want of an answer. Infants are deemed and taken to be incapable of making contracts or admissions in civil transactions, ordinarily, that are binding upon them. And it is because of the legally supposed want of proper understanding and discretion of the infant that he is not permitted to sue in his own name; and when he is sued in civil proceedings, that he is required to defend or answer by guardian *ad litem*. Generally, the appointment of a guardian *ad litem* has been regarded as a mere matter of form, and the answer to be filed by him is also almost universally merely formal, asking the court to protect the interest of the infant. Generally, the guardian *ad litem* has no personal knowledge of material matters alleged in the bill, and he can neither admit nor deny the allegations in relation thereto.

Infants are regarded as the wards of the court, and this is peculiarly so with respect to a court of equity in causes before it involving their interests, to which they are parties. The mere omission or neglect of a guardian *ad litem* to file a proper answer cannot be allowed to prejudice the infant. And I apprehend that ordinarily the admissions of the guardian *ad litem*, made in the answer, would not have the force of evidence against the infant. It would certainly be destructive and ruinous to infants and their rights and estates to take material allegations of a plaintiff's bill as confessed by them, for the purposes of the suit, which are not expressly denied or controverted in the answer made for them by their guardian *ad litem;* and I do not feel authorized to hold that the thirty-sixth section of chapter one hundred and twenty-five of the Code, so far as it relates to taking material allegations of a bill or material allegations of new matter in an answer constituting a claim for affirmative relief not controverted by a reply, as true, should be applied strictly, if at all, to the answers of infants by guardians *ad litem*. I feel bound, upon principle, to hold that the answer of the infants, filed in this case, is sufficient to put the plaintiff upon proof of every material allegation of his bill.

The answer of the adult heirs denies all the allegations of the bill not expressly therein admitted and relies upon the statute of limitations. The plaintiff failed to file with his bill as exhibits, or otherwise, official copies of any of the judgments alleged and set up in his bill, and the record fails to show that there was any legal evidence of the existence of either of said alleged judgments before the commissioner to justify or authorize him to report the judgments as existing and as being leins on the realty which decended to the heirs. And so as to all the other judgments reported by him as being liens on the realty. No claims against the estate of the decedent are reported by the commissioner except judgments and except the $179.09, for taxes. And

although each of the commissioners filed with their
reports the depositions taken by them it no where ap-
pears, by official copies of the judgments or any of them,
which are reported, that the judgments are now or ever
were in existence.   So far, therefore, as each and all the
judgment debts reported by the commissioner are con-
cerned, their existence was reported, so far as the record
discloses, without sufficient legal testimony.   No excuse
whatever is given by the plaintiff or any of the other
judgment creditors for the failure to produce official
copies of their alleged judgments.

1875.
January Term.

Laidley
v.
Kline, Admx.

As remarked a number of exceptions were filed to said
report by defendants involving directly several of the
questions herein determined, adversely to the plaintiff
and others, reported creditors.   It was the duty of the cir-
cuit court as there were infant defendants interested to look
into said report, evidence and vouchers, and see that
there was legal evidence of the existence of said judg-
ments before it confirmed the report and directed the
lands to be sold, and see that there was legal evidence of
the existence of said judgments before it confirmed the
report and directed the lands to be sold, whether there
were exceptions filed to the report or not.   And the cir-
cuit court having confirmed said report, under the circum-
stances, it is competent and proper for this Court to
look into the evidence and the whole record to see if
the court erred in confirming the report.

Where the lands of infant heirs are sought to be sold
to satisfy debts of the ancestor set up as existing, and
unpaid and the cause is referred to a commissioner to
hear proof of the debts and he makes report of debts
and describes them in his report, it is the duty of the
court to inspect the evidence upon which the report is based
in this respect whether the report be excepted to for that
cause or not, and to refuse to confirm the report as to any
of the reported debts which do not appear to be estab-

30

lished by legal evidence. And if the court confirm such report when the same is not supported by sufficient evidence it is error for which the decree of confirmation should be reversed. The court fails to discharge its duty when it does not carefully guard the interest, of infant defendants against wrong and injustice in a proceeding like this. The rule established and recognized by this Court as to exceptions to the reports of commissioners, as to adult defendants, does not apply to infant defendants. Adult defendants are supposed to be able to defend themselves, and if they fail to except to the report they may be deemed generally, to have acquiesced, therein; but not so with regard to infants. The plaintiff and none of the creditors filed any exceptions to the report of the commissioner and it is therefore unnecessary in this case to notice any rejected claims. As the adult heirs of the intestate did not controvert, in their answer, the existence of any of the judgments alleged in the plaintiff's bill and especially the judgments therein mentioned as being rendered against the intestate during his life but only averred their payment by the intestate and did not except to the report of the commissioner which was confirmed or to either of the reports upon the ground that there was not sufficient evidence in the cause or before the commissioner to establish the existence of said judgments, or any of them, it would perhaps be unjust, and inequitable, under the circumstances, to reverse the decrees rendered by the circuit court, and dismiss plaintiff's bill.

But for the foregoing reasons the decrees rendered in this cause by the circuit court of the county of Kanawha on the 9th day of November, 1872, the 26th day of July, 1872 and the 15th day of April, 1871, must be reversed and annulled and the appellants recover against the appellee (James M. Laidley,) their costs here in this Court expended. And this Court proceeding to render such decree in the cause as said circuit court ought to have rendered it is adjudged, ordered, and decreed, that

this cause be remanded to the circuit court of the county of Kanawha for further proceedings therein to be had according to the principles settled by this opinion and the rules and principles governing courts of equity with leave to the defendant, Elisabeth Kline as the widow and administratix of Daniel H. Kline, deceased, to file her answer in this cause if she asks so to do; but the hearing of the cause is not to be delayed for such answer.

The other Judges concurred.

DECREES REVERSED AND CAUSE REMANDED FOR FURTHER PROCEEDINGS.