# Wheeling.

## CUSTER *et al.* v. CUSTER *et al.*

Decided November 20, 1880.

*(Absent, JOHNSON, JUDGE.)

An administrator *de bonis non* of D. C. confessed judgment in favor of the administrator of M. C., pursuant to a writen agreement made between them. The administrator of M. C. then filed a bill in chancery against the administrator *de bonis non* of D. C. and the widow and heirs of D. C. to enforce the said judgment as a lien against the lands of said D. C. HELD:

I. Such a judgment is not a lien upon the lands of which D. C. died seized.

II. The decree showing upon its face, that it was enforcing such a judgment as a lien against such land, may be reviewed and reversed upon a proper bill of review filed for that purpose by the heirs.

1880
Special Term.

Custer *et al.*
v.
Custer *et al.*

Appeal from and *supersedeas* to a decree of the circuit court of the county of Wood, rendered on the 14th day of March, 1877, in a cause in chancery in said court then pending, wherein Sylvester B. Custer and others were plaintiffs, and John P. Custer and others were defendants, allowed upon the petition of said plaintiffs.

Hon. J. M. Jackson, judge of the fifth judicial circuit, rendered the decree appealed from.

MOORE, JUDGE, furnishes the following statement of the case:

John P. Custer as administrator of the estate of Mark

*Counsel in court below.

Custer, deceased, instituted in the circuit court of Jackson county, November —, 1866, a suit in chancery against D. W. Sayre, administrator *de bonis non* of David Custer, deceased, Jerusha Custer, widow of said David, Sylvester Custer and Seth Custer, infants and heirs at law of said David Custer, deceased. The suit was based upon the following judgment :

"JACKSON COUNTY COURT, February 17, 1860.

"John P. Custer, administrator of Mark Custer, Sr., deceased, *v.* D. W. Sayre, administrator of David Custer, deceased. This day came the parties in their own proper persons, and thereupon said defendant by consent of plaintiff confessed judgment for the sum of $352.76, damages with legal interest thereon from the 17th day of February, 1860, till paid, therefore it is considered by the court that the plaintiff recover against the defendant the sum of $352.76, the damages confessed as aforesaid, with interest as aforesaid and the costs of this suit, to be made and levied of the goods and chattels in the hands of the administrator yet to be administered."

The bill set out said judgment as an exhibit, and alleged, that on the 1st day of March, 1860, an execution issued on said judgment for the amount and was placed in the deputy sheriff's hands and made returnable to the first Monday in May, 1860, and was returned by him endorsed as follows : " Returned no property found, and no assets in the hands of the administrator." The bill further alleged, that the only property, of which the said David Custer died seized, was a tract of one hundred and seventy-two acres of land, more or less, which was conveyed to him by Mark Custer by deed dated the 29th day of October, 1854, and duly recorded in said Jackson county, where said land lies. A copy of the deed is exhibited with the bill. The bill also alleged, that said judgment was a lien on said tract of land ; and that the land would not rent for enough in five years to pay the judgment, interest and costs, and prays, that the said tract of one hundred and seventy-two acres of land may

be sold to pay the judgment, interest and costs, and for general relief.

D. W. Sayre, as administrator *de bonis non* of David Custer, deceased, answered the bill, stating that David Custer was the son of Mark Custer and married respondent's daughter; that David Custer had bought of his father, Mark Custer, the tract of one hundred and seventy-two acres of land mentioned in the bill, and at the time of his death said David had paid $—— of the purchase-money to said Mark, leaving a balance in principal and interest of $352.76, still due on the land; that when David Custer died, his father, the said Mark, administered on his estate, and said Mark dying, his son, J. P. Custer, administered on his, said Mark's, estate, and in that character came to respondent, who had qualified as administrator *de bonis non* of David Custer, deceased, for settlement of the balance of said debt; that respondent desiring to save a piece of land for the widow and infant children of David Custer, agreed with said J. P. Custer, administrator, that seventy-two acres of the upper end of said tract of land should be sold to pay said debt; that it was agreed and fully ascertained between complainant and respondent, that the lower one hundred acres of said tract was paid for, and only the said upper seventy-two acres remained to be paid for, and that complainant should sell the said seventy-two acres and release the one hundred acres, and should the seventy-two acres not sell for enough to pay complainant's claim, then complainant was to look to said David Custer's personal estate for the balance, and not interfere with the one hundred acres, which agreement was reduced to writing by Joseph Smith, Esq., attorney for said complainant, and signed by complainant and respondent, and is filed as a part of the answer and bears date February 15th, 1860, and by which complainant was to bid the seventy-two acres to $237.76, and then release the realty; that in pursuance thereof, on the 17th of the same month, respondent gave the confession of judgment filed with

the bill; that it is true, as alleged in the bill, that David Custer at the time of his death had no property except the said land; the only assets of any kind in respondent's hands at the date of said confession of judgment consisted of some notes and claims, which were not long afterwards turned over to complainant, and his receipt was taken for the same, which receipt is exhibited with the answer; that there were other dealings and accounts in favor of David Custer against Mark Custer in their lifetime, which were considered in the settlement and compromise between respondent and complainant aforesaid, but as respondent agreed to said compromise, he is advised that he cannot now go behind it any more than complainant can. David Custer's heirs are entitled to participate in said claim of complainant; that it was the mutual desire of respondent and complainant in making said compromise to save costs and to secure the one hundred acres of land aforesaid to the widow and infant children of complainant's said brother, David Custer, deceased; that respondent has nothing in his hands belonging to the estate of David Custer, having delivered all the assets in his hands to complainant since said compromise and confession of judgment, to wit, on the 27th day of December, 1860, the date of said receipt.

The answer of the infants by John R. Riley, guardian *ad litem,* is simply formal. Jerusha Custer, widow, did not answer. The deed from Mark to David Custer, states the consideration for the one hundred and seventy-two acres of land to be $560.67 and retains no lien for balance of purchase-money, *but acknowledges receipt of all.* No testimony was taken in the cause; and no settlement of the administrator's account was had.

The circuit court of Jackson county at the November term, 1868, rendered a decree, by which it was adjudicated, that the judgment of $352.76 with interest and costs was wholly unpaid and *was a lien on the seventy-two acres* only of said land, and a sale was decreed of said seventy-two acres, unless the administrator of David Custer,

deceased, should pay the complainant, administrator of Mark Custer, deceased, the judgment confessed as aforesaid with interest from the 17th day of February, 1860, and the costs of the suit, within thirty days from date of the decree. The seventy-two acres of land were sold under said decree by Okey Johnson, who had been substituted as commissioner for that purpose in lieu of Flesher, deceased ; and a report of the sale was made by said commissioner Johnson, showing that pursuant to the decree he sold the seventy-two acres of land March 4, 1870, at public auction to said John P. Custer, he being the highest and best bidder therefor, for the sum of $239.76, which sum said purchaser paid to said commissioner. On the same day, March 4, 1870, the said circuit court rendered a decree confirming the sale and appointing Okey Johnson the commissioner to convey on behalf of the heirs of David Custer, deceased, the seventy-two acres of land to the purchaser, the complainant, and directed that the said D. W. Sayre, administrator of David Custer, deceased, have credit for the said sum of $239.76, as of the 4th of March, 1870, on the decree rendered against him at the November term, 1868, and that execution may issue against said D. W. Sayre as such administrator for the residue of said debt of $352.76, in said decree mentioned, with the interest and costs then decreed to be paid, which includes the costs in said suit since made.

On the first Monday in March, 1871, Sylvester B. Custer and Seth W. Custer by their guardian and next friend, Jerusha Custer, filed at rules in the said circuit court a bill of review against the said J. P. Custer, which states the foregoing pleadings and proceedings and decrees had in said cause, and prays the court to review the said decree rendered at the November term, 1868, of said circuit court and the decree of March 4, 1870, and that said decrees be reviewed for errors apparent on the face thereof and also prays, that the deed from special commissioner Johnson be declared null and

void, and that in the meantime John P. Custer, the purchaser and complainant in the original bill, be restrained from committing waste, selling or incumbering said land. The bill further seeks to impeach the decrees upon the ground of mistake and fraud. The injunction was granted, and an order made by Judge Loomis, February 14, 1871, allowing the bill to be filed as a bill of review.

The bill insists that said decrees are erroneous and ought to be reversed and set aside, and declared fraudulent and void for the following reasons :

" 1st. Because the papers dated 15th February, 1860, signed by said J. P. Custer and D. W. Sayre, upon which the confessed judgment was obtained at law on the 17th February, 1860, and which the said suit in chancery was brought to enforce, was not such an instrument of writing obligatory or contract as the said D. W. Sayre, administrator, was authorized as administrator in law to execute and enforce.

" 2d. Because the papers in said cause show upon their face that said J. P. Custer after said pretended confessed judgment, in December, 1860, as shown by Exhibit No. 2 filed with said D. W. Sayre's answer, and not denied or disproved, actually received and receipted for $56.85 to said D. W. Sayre, yet said decree rendered in said cause does not notice or give any credit for said sum of $56.85, paid December 27, 1860, but decrees and orders execution against the estate of said David Custer for the sum of $352.76, after deducting $239.76, with interest from the 17th February, 1860, and costs.

" 3d. Because the facts and circumstances connected with the execution of said paper, dated 15th February, 1860, and the judgment confessed thereon, as hereinbefore fully stated and set forth, and which came to the knowledge of these complainants since the rendition of said decree, show that said paper dated 15th February, 1860, and the said confessed judgment thereon, and subsequent proceedings to enforce the same, were obtained through misrepresentation, imposition, concealment and

1880
Special Term. .

Custer *et al.*
v.
Custer *et al.*

collusion and fraud, and, therefore, not such as a court of equity will lend its aid or assistance to enforce, more especially against infants or minor heirs.

" 4th. Because the said land was not duly advertised by said special commissioner, Okey Johnson, as required by the interlocutory decree made in the cause ordering the sale.

"5th. Because the said land was not sold in the manner required by law, and did not bring more than one fourth of its actual value, the price paid being wholly inadequate, and not such as said land would bring in a properly advertised and conducted sale."

The answer of John P. Custer to the bill of review insists, that there was a valid debt due from the estate of David to the estate of Mark Custer at the time of the confession of the judgment by D. W. Sayre as administrator, and that the same was for the balance of the purchase-money of the one hundred and seventy-two acres of land. He denies that the $56.85 was to be credited on said judgment, but avers that it was paid to him by said administrator, Sayre, on the purchase-money of the one hundred acres. He denies that David was to have the one hundred and seventy-two acres from said Mark at $2.50 per acre; and says that the $256.00 in the hands of Squire Sayre, alleged in the bill as belonging to said David, was thus : said squire owned a tract of land on Thirteen-Mile creek, and erected a grist and saw-mill thereon, and said Squire Sayre proposed to said Mark, that if said Mark would bring his cattle and log-wagon on to said tract of land, they would go into co-partnership in the timber thereon, and divide the profits thereof; that in the spring of 1854, Mark Custer ran the timber to the city of Louisville, and there sold it, and brought back the proceeds of sale and divided it with said Squire Sayre; that he says, and believes it true, that David Custer at that time had no means of his own, and was then living with his father. Respondent denies, that Mark Custer ever requested of David any

money to pay to George McCall on said land; that respondent is informed and believes, that Mark sold to David one hundred and seventy-two acres of land at the price of $566.67, and out of that said Mark gave to David $200.00 as a gift, and to assist him in starting in the world, and which was to be in full of any interest that David might have in his father's estate, and that the said $200.00 and some other payments thereon reduced the purchase-money for said tract of land to the sum for which the judgment was confessed; that he knows nothing of the destruction by Mark of the notes of David, as alleged in the bill. He also denies the allegations, that said Mark never made demands for, and set up no claims to, the sum of $352.76; and avers, that on the contrary said Mark always claimed and demanded the same, and that the death of said Mark only prevented his taking the necessary legal steps to enforce said demand, &c., &c. In another portion of his answer, respondent admits the destruction of the notes given by David to Mark, but says it was because they were not "land-notes," but were promissory notes, and that it was then and there agreed by said David and Mark that "land-notes" should be executed by said David, which David's death prevented being done. Respondent also denies the charge of fraud.

The cause was transferred from the circuit court of Jackson county to the circuit court of Wood county, and docketed in said circuit court of Wood county May 3, 1872. After filing the bill of review Jerusha Custer, the widow, intermarried with Elisha Karns, who was afterwards made a party.

Special commissioner Johnson filed his answer, admitting he had made the sale of the seventy-two acres, and had it confirmed by the court, but denies all fraud and collusion, and denies the charge that said sale was not duly advertised and properly made under the decrees of the court, and avers that John P. Custer's bid was the highest and best bid he could get, and that no doubt the

land would have sold for much less, had it not been that said Custer was bound to bid as high as he did.

On the 9th day of July, 1875, the circuit court of Wood county, made an order referring specific questions in the cause to commissioner Barna Powell, but which may be briefly stated as follows, viz : To ascertain, state and report the indebtedness of the estate of David Custer to Mark Custer's estate, and to state the account of D. W. Sayre as administrator of David Custer, deceased. The commissioner having taken testimony on the questions referred to him, reported thereon June 28, 1876, which report was excepted to by the complainants in the bill of review, December 26, 1876, which exceptions were overruled by the decree of the court of March 14, 1877; and the court by the same decree dissolved the injunction and dismissed the bill of review with costs. Upon this decree the complainants in the bill of review have petitioned for writs of appeal from and *supersedeas* to it, and pray that said decree may be reviewed and reversed, and that the decrees of the circuit court of Jackson county, complained of in said bill of review, may also be reviewed and reversed, which said writs were awarded by the Supreme Court of Appeals, as prayed for, at its June term, 1877 ; and the cause appears before the court upon the following assignments of grounds of error :

" The court erred in dissolving the injunction and dismissing the bill of review—

" 1st. The bill of review was properly filed as such to review and reverse the said decree of the circuit court of Jackson county, rendered on the — day of ——, 1870, for errors apparent upon the face of the record of that decree ; that decree was erroneous and should have been reversed.

" (a) Because it proceeded upon the ground that the judgment confessed by said D. W. Sayer, administrator of the estate of David Custer, deceased, was a lien on

the real estate of which the said David died seized and which had descended to his heirs.

"(*b*) Because it proceeded upon the ground that the said judgment was evidence against your petitioners of the indebtedness of the estate of said David Custer to the estate of said Mark Custer.

"(*c*) Because there was no evidence in said cause of John P. Custer against your petitioners and said Sayers, as administrator of David Custer, deceased, of any indebtedness of the estate of said David to the estate of said Mark which was proper evidence against your petitioners.

"(*d*) Because the alleged demand set up in said suit, on which said judgment was confessed, if any such ever existed, was barred by the statute of limitations before the institution of any suit.

"2d. The court erred in referring the cause upon the bill of review to a commissioner.

"3d. In overruling the exceptions taken by said petitioners to said commissioner's report.

"4th. In failing to sustain the exceptions of your petitioners to the depositions of Joseph Smith, J. P. Custer and Mrs. Sutton.

"5th. In not sustaining the bill of review on the final hearing, and reversing the said decree which it was filed to review."

*C. C. Cole,* for appellants, cited the following authorities:

Story Eq. Pl. §§ 403, 405, 407, 412; 15 Gratt. 518; 8 W. Va. 218; Code, ch. 130, § 23; *Id.* ch. 133, § 5; 8 W. Va. 174.

*H. C. Flesher,* for appellees.

MOORE, JUDGE, delivered the opinion of the Court:

I approve of Lord Eldon's view in *Young* v. *Keighly,* 16 Ves. 348, 350, that "The ground of a bill of review

is error apparent on the face of the decree, or new evidence of a fact materially pressing upon the decree and discovered at least after publication in the cause." And this view is clearly enunciated in *Bowyer* v. *Lewis*, 1 H. & M. 554, where Judge Tucker makes reference to the authorities cited in Mitford's Chancery Pleadings, 78 to 84, and states, that they " clearly show, that a bill of review, properly so-called, is granted only after a final decree, either *upon error in law* appearing in the body of the decree itself, or upon discovery of *new matter."* That declaration of the doctrine is only the repetition of Mitford's enunciation of the object of a bill of review, viz : that it " is to procure an examination and reversal of a decree made upon a former bill and signed by the person holding the great seal and enrolled. It may be brought for error of law appearing in the body of the decree itself, or upon discovery of new matter." The same doctrine is laid down by this Court in *Nichols* v. *Heirs of Nichols*, 8 W. Va. 174, where it is held, that " a bill of review lies to have a final decree of the court revised, altered or reversed," and that " such a bill lies in two classes of cases, viz : upon error in law appearing in the body of the decree itself, or upon discovery of new relevant, material matter, or material evidence not known prior to the decree sought to be reviewed, and which could not have been discovered by the exercise of reasonable diligence," * * * " although, ordinarily, a bill of review will not lie, where the newly discovered evidence is simply confirmatory or cumulative."

The view I take of this case does not render it necessary to draw the distinction between a bill of review and a bill in the nature of a bill of review, or, as it is sometimes designated, a supplemental bill of review, because the bill in this case attacks the final decree in the original case directly for errors apparent in the body of the decree itself ; and if such errors in fact exist, then there can be no question, that the bill exposing them is in the nature of a writ of error, and thus shows itself as a bill of review under the strictest authority.

But before entering upon the dissection of the final decree it will be well to cite the law as settled in this State upon the vital questions, as I conceive them to be, involved in this case. The case of *Laidley* v. *Kline, adm'r,* 8 W. Va. 218, settles four cardinal principles, which, I think, affect this case. Those principles are: 1st. " The real estate of an intestate in no wise and for no purpose goes into the possession or control of the administrator; but the legal title to the same descends directly to the legal heirs, subject of course to the just debts of the intestate, in so far at least as the personalty falls short of paying the same. 2d. A judgment obtained by a creditor against the administrator is not a judgment-lien on the realty of the intestate. 3d. Generally, the court should not decree the sale of the realty of an intestate to pay debts or judgment-liens before the accounts of the administrator have been settled and the unadministered assets ascertained. 4th. Unless the widow of an intestate elects in a proper manner to take the value of her dower in the real estate, which her husband owned at his death, her dower should be assigned to her in the realty before sale thereof for the payment of the intestate's debts. 5th. There being no privity between the personal representative and the party, to whom the real estate has descended or been devised, a judgment against such personal representative is not even *prima facie* evidence against the heir or devisee."

The decree of November, 1868, states, " that the judgment for $352.76, with interest thereon from the 17th day of February, 1860, as set out in the complainant's bill, is not a lien on the whole tract of one hundred and seventy-two acres of land described in exhibit ' C ' filed with the bill ; but according to exhibit No. 2, filed with defendant's answer, the said judgment was to be confessed for the amount aforesaid, and whereas a decree should be had to enforce against seventy-two acres of said land said judgment, and, when sold, the complainant was to bid the same to $239.76, it is a lien,

therefore, on the seventy-two acres of land on the east end thereof." The decree then proceeds to adjudge, "that unless the said D. W. Sayre, administrator of David Custer, deceased, do pay to the complainant, administrator of Mark Custer, deceased, the judgment confessed as aforesaid with interest from the 17th day of February, 1860, and the costs of this suit within thirty days from this date, the said U. W. Flesher, who is hereby appointed special commissioner for that purpose, shall, &c.,  *  *   proceed to sell, &c., the seventy-two acres of land.

The exhibit "C" filed with the original bill is the deed from Mark Custer to his son, David Custer; and the exhibit No. "2" filed with D. W. Sayre's answer to the original bill is the agreement between the two administrators, and is as follows:

"It is agreed between J. P. Custer, administrator of Mark Custer, deceased, and D. W. Sayre, administrator of David Custer, deceased, that said Sayre, administrator as aforesaid, is to confess judgment for $352.76 which is due upon land, and that when there is a decree to sell the land, it is only to go against the seventy-two acres, and not against the whole one hundred and seventy-two And said Custer is to *bid* the seventy-two acres to the sum of $237.76 at the sale, and not to trouble the realty for the residue, but to look to the *personalty* for the rest of the debt.

"Witness our hands and seals, February 15, 1860.

"JOHN P. CUSTER, [Seal.]
"D. W. SAYRE,   [Seal.]"

The decree showing upon its face, that it was enforcing as a lien against the seventy-two acres of land, that had descended to the complainants in the bill of review from their father, David Custer, deceased, being part of the one hundred and seventy-two acres of land, of which said David died seized, and in which the widow was entitled to dower, a judgment confessed by D. W. Sayre, administrator, &c., in favor of John P. Custer, admis-

trator, &c., in pursuance of the foregoing agreement, brings the case clearly within the principles of the authorities cited, and makes a proper case for a bill of review. Such a judgment is not a lien upon the land, and should not be enforced against the land. The agreement is made a part of the decree by the decree itself, and it shows upon its face, that it is not such an agreement, as administrators could enter into, so as to bind the heirs; and to enforce a confessed judgment rendered upon it against the lands, that have descended to heirs and in which the widow is entitled to dower, would open the door to fraud; and besides the widow and children of the intestate are in no wise privy to the agreement, and cannot be prejudiced by any judgment thereon, however it might affect the administrator himself. It is the duty of a court of chancery to protect the interests of widows and infants in such cases, and although the bill to enforce such a judgment should properly have been demurred to, it was nevertheless the duty of the court to have dismissed the bill for the want of equity.

The court having carried into decree the prayer of the bill contrary to the law and the rules governing courts of equity, as is apparent upon the face of the decree, it has erred; and a bill of review is proper to correct it.

Taking this view of the case, it is not necessary to consider the other questions presented by the appellants, as from what has already been presented, it must follow, that under the bill of review the court erred in referring the cause to a commissioner, and erred in not sustaining the bill of review on the final hearing, and in not reversing the decree, which it was filed to review.

I am, therefore, of opinion that the decree of the circuit court of Wood county, made on the 14th day of March, 1877, should be reversed with costs, the bill of review sustained, and the decrees of the circuit court of Jackson county sought to be reviewed thereby, viz.: the decree of November term, 1868, and the decree of March 4, 1870, confirming the commissioner's sale of

the seventy-two acres of land, and directing the conveyance thereof to the purchaser, John P. Custer, be reversed, set aside and annulled, and the original bill filed by said John P. Custer be dismissed, with costs, and the deed from commissioner Johnson to him be cancelled. But nothing in this decree shall prejudice John P. Custer, administrator of Mark Custer, deceased, from instituting any suit as a creditor of David Custer, deceased, that he may be advised to bring, to subject the real and personal property of David Custer, deceased, to the payment of any debts that said David may have owed to the said Mark Custer, his intestate, at the time of said David's death.

DECREE REVERSED.

JUDGES HAYMOND AND GREEN CONCURRED.