## RANDALL & CO. *v.* YUBA COUNTY.

A Tax Collector has power to contract for publishing the delinquent list of tax payers, so as to bind the county for payment of the price.   He is the agent of the county in this respect, and, for any reasonable exercise of that agency, the county is responsible.

And where he did so contract with plaintiffs, who publish the list and sue the county for the price, the fact that the Tax Collector had assented to a contract previously made, or attempted to be made, by the Supervisors with another party, for publishing the list, is not enough to affect plaintiffs, if they had no notice of it; and evidence of such assent was properly ruled out.

An objection that an account presented to the Supervisors of a county was not " authenticated," as required by the statute, (Acts 1857, p. 107,) cannot be taken in the Supreme Court for the first time.   ' ·

Appeal from the Tenth District.

Suit to recover of defendant one thousand one hundred and xty dollars, for publishing the delinquent tax list of the county r the year 1858.   The complaint avers that plaintiff published id list at request of defendant, etc.   Answer denies that plain-

tiff performed any services of the kind by authority of the county, and sets up that the. Board of Supervisors had, before the printing was done by plaintiffs, contracted with another paper to do the work.

On the trial, plaintiffs relied on a contract between themselves and one Moore, the Tax Collector of the county, by which they were employed to publish said list on behalf of the county. Other facts are not important. Plaintiffs had judgment. Defendant appeals.

*F. L. Hatch*, District Attorney, and *Z. Montgomery*, for Appellant, argued: that the Board of Supervisors have the power to direct the Tax Collector as to the paper in which he shall publish the delinquent tax list; and, that the Board having already made a valid contract with another paper to publish the list, the subsequent contract, made by the Tax Collector, with plaintiffs, was void. (Citing Wood's Dig. 695, Art. 3321.) They also cited Wood's Dig. (696, 697,) to the point, that plaintiffs' demand, even if otherwise valid, was not properly authenticated.

*Reardan*, for Respondent.

The only question is, was there any privity of contract, between the plaintiffs and defendant.

We contend that there was; the Collector is the agent of the county, (not of the Supervisors,) for the collection of public revenue. The Supervisors are but agents of the county for special purposes, with enumerated powers; they have no power except such as is expressly given to them by statute. They cannot sue in their own names for moneys due the county, nor be sued for moneys owing by the county.

The county derived the benefit from the work and labor of the plaintiffs; the Collector did not; on general principles, if the plaintiffs have a cause of action against the Tax Collector, they could still sue the county, the Tax Collector's principal.

The law requires the Collector to collect a special fund, and pay it over to the county for the cost it may incur in printing the delinquent tax list. (Wood's Dig. 619, Secs. 14, 15.)

It is scarcely reasonable to suppose that the Legislature intended that the Collector should be personally responsible to the printer, and at the same time deprive him of this very money

by which the cost of printing the delinquent list was to be paid. It will be observed that the same section provides that the Collector shall retain one-half of the fund assessed upon delinquents, in full for all his services in preparing the list; now why should he be allowed to retain one-half for his services, and no portion, whatever, for money actually paid out by him for printing.

Again, it is clear that a party, exclusively entitled to the possession of a special fund, out of which a certain indebtedness was to be paid, and, actually, in the possession of such fund, should be primarily liable.  The Collector had sole control over the printing, and the Supervisors had the right to examine and audit the account for the work; this is the boundary line between their respective powers, and one cannot encroach upon the other's domain.

As to the power of the Board of Supervisors, see Wood's Dig. 684, Sec. 9.

BALDWIN, J. delivered the opinion of the Court—COPE, J. concurring.

The main and decisive question in this case is, whether a Tax Collector has the power to contract for the publishing of the delinquent list of tax payers, so as to bind the county for the payment of the price.  It is contended by the Appellant that he has no such power, but that the Board of Supervisors have the authority to make or authorize such contracts.  This question is to be decided by the statutes.

1. By the Revenue Law, (Wood's Dig. 619, Sec. 14,) it is provided that on the Saturday next preceding the third Monday in November, the Tax Collector shall have completed a list of all persons and·property then owing any taxes, which list shall be called the delinquent list, and shall be published as hereinafter provided; and after said list is completed and published, the Tax Collector shall collect, in addition to the taxes, and the five per cent. added thereto, fifty cents on each and every lot, piece, or parcel, of land, separately assessed, and also on the assessment of personal property of each delinquent tax payer; twenty-five cents of which shall be paid to the county, in full, for the cost it may incur for printing the list, and the other twenty-five cents shall be retained by the Tax Collector, in full for all ser-

vices in preparing the lists. By the 15th Section it is provided that the Tax Collector shall cause the delinquent list to be published, giving the names, etc.

It thus appears that the county is to pay for the printing, and a fund is provided for the purpose of indemnifying it for the payment of the charge. It also appears that the Tax Collector is charged with this duty of having the printing done. It is true that the Act speaks of the cost incurred by the county; but this does not show, or tend to show, that this cost must be incurred by the order, or any action, of the Supervisors, for there is no reason why the Tax Collector—who is a county officer—may not as well be the agent of the county, to have this printing done, as the Board of Supervisors.

No control over this subject seems to be given any where in the Act, to the Board of Supervisors, who are only agents of the county, with special powers; but this specific duty seems to be intrusted to the Tax Collector; and, being a mere ministerial duty, it is not perceived that he is not as competent to discharge it as a Board. It does not follow that the county would be responsible for every contract which a Tax Collector might make. But for the reasonable exercise of this agency the county is bound. It could scarcely have been contemplated that the Tax Collector should pay the printer, and then receive the money from the county, for the Act provides that the fund for the reimbursement of the county, shall be paid by him into the treasury, which, probably, would not have been considered necessary if it were to be returned to him again as money due him for paying for the printing.

2. Some technical errors are assigned, but we think there is nothing in them.

The question put to the witness was not improperly refused; the mere fact that the Tax Collector had assented to a contract previously made, or attempted to be made, by the Superpervisors with another party, is not enough to affect the plaintiffs, if they had no notice of it; and no offer was made to show that they had. The same remark applies to the striking out of a portion of the answer.

3. The Appellant made no objection to the account, because it was not authenticated, and it cannot be urged now for the first time.

On the whole case, we think the judgment should be affirmed. Ordered accordingly.