Fisk, respondent, *v.* Cuthbert, appellant.

Statutory construction — *printing "at the public expense" brands and marks.* The act relating to brands and marks (Cod. Sts., ch. 64), provides that the general recorder shall have published a list of certain marks and brands, and cause to be printed, "at the public expense," a sufficient number of copies to furnish each county clerk in the Territory with copies for gratuitous distribution. *Held,* that this statute authorizes the general recorder to enter into a contract for the printing of said list at the expense of the Territory.

Case affirmed. The case of *Langford* v. *King,* 1 Mon. 38, holding that a citizen of the Territory cannot sue it, affirmed.

Statutory construction — *duty of auditor.* In determining the duty of the Territorial auditor in doubtful cases, courts will consider the financial legislation of the Territory and the practical construction of the same by the public officers.

Mandamus to Territorial auditor. F. printed copies of said list of marks and brands under a contract with said recorder. The Territorial auditor, after demand, refused to issue a warrant for the payment of said services. F. applied for a writ of mandate, and the answer of the auditor admitted the facts stated in the application, and alleged two reasons for his refusal: that the law did not fix a certain compensation for the services, and that

Vol, II—75

the auditor had no jurisdiction to determine the value thereof. The court issued the peremptory writ and commanded the auditor to issue the warrant. *Held*, that the writ was properly issued.

PRACTICE — *argument of counsel*. On the hearing of this appeal the counsel for the auditor, the appellant, submitted a written argument and contended that the auditor had jurisdiction to determine the value of F.'s services. *Held*, that the court will not permit the auditor to controvert his answer, and that the question cannot be raised on this appeal.

*Appeal from Third District, Lewis and Clarke County.*

THE writ of mandamus was issued by WADE, J.

J. K. TOOLE, District Attorney, Third District, for appellant.

The complaint is fatally defective. It does not allege that appellant refused to audit the account of respondents, or that any demand was made that he should do so.

The auditor is not the auditor of his own account. He cannot issue a warrant unless he is expressly authorized by law. Cod. Sts. 381, §§ 1, 5 ; 478, §§ 9, 10. Appellant had no power to audit or issue the warrant. Respondents' account was a contingent charge, and appellant could issue no warrant until some proper officer or tribunal allowed it. No specific sum is allowed for respondents' services.

Appellant can only be asked to exercise his discretion, if he is required to audit respondents' account. No other officer nor tribunal has any discretion in acting on the account in the first instance.

Appellant has no interest in the amount to be allowed respondents other than that in common with other citizens. Why is he made a party to the suit? It is not the duty of the auditor to issue a warrant after a claim against the Territory has been adjudicated and allowed in the courts. After such a claim has been audited and allowed by some proper tribunal, appellant is expressly prohibited from issuing his warrant. Cod. Sts. 141, § 518 ; 381, § 1 ; 478, §§ 9, 10.

Respondents' claim against the Territory has been lawfully incurred, but appellant, without further legislation, cannot issue his warrant for it. The claim should be reported to the legislature, and paid by an appropriation. Cod. Sts. 564, § 5. The words,

"specially" and "expressly," used in the statutes, refer to each particular claim for which a warrant is to issue.   The words, "at public expense," do not mean out of the Territorial treasury.

Respondents demanded of appellant a warrant for the amount of their claim, but this is not a demand to audit and settle it.

CHUMASERO & CHADWICK, for respondents.

The demand to audit respondents' account is included in the demand for a warrant.   Appellant refused to do any thing.   It is the duty of the Territorial auditor to issue his warrant for the amount due when the law recognizes the claim.   The amount of respondents' claim has never been disputed.   The general recorder of marks and brands was required to have the pamphlets printed.   Cod. Sts., ch. 64.   This statute expressly authorizes the recorder to make the contract for the printing and establish the price.

It was not necessary to define the duty of the appellant in this law, which says that certain work shall be done and must be paid for from the public treasury.   Any other construction would render the act nugatory.   The words "at public expense" are synonymous with "out of the Territorial treasury."

BLAKE, J.   This is an appeal by the Territorial auditor from the judgment of the court below, granting the application of the respondents for a peremptory writ of mandate, and commanding him to issue a warrant upon the Territorial treasurer for the amount of their account for printing a pamphlet containing a list of brands and marks.   The facts stated in the application are not denied in the answer of the appellant.   It appears that the general or Territorial recorder of the brands and marks entered into a contract in September, 1875, with the respondents, by which they printed 175 copies of the pamphlet and delivered the same to the proper officer, and that these services were reasonably worth $225. The respondents demanded of the appellant a warrant on the Territorial treasurer for this sum, March 6, 1876, when their claim for these services were delivered to him.   The appellant refused to issue any warrant and alleges in his answer the following reasons therefor:   That the law does not fix any certain amount for the payment of respondents, and that the Territorial auditor

has no jurisdiction to determine the value of said services. The appellant admits in his argument that the respondents' claim has been lawfully incurred.

We must examine the following statute: "The general recorder of marks and brands shall once a year have published a list of all brands, or marks and brands, which have not been previously published, and cause to be printed, *at the public expense,* a sufficient number of copies, in pamphlet or other convenient form, to furnish each county 'clerk in the Territory with twenty-five copies thereof, for gratuitous distribution." Cod. Sts. 564, § 5. The term "public" is applied strictly to that which concerns all the citizens and every member of the State. 1 Greenl. Ev., § 128. It refers to "the whole body politic." 2 Bouv. L. D., tit. "Public." The intention of the legislative assembly respecting certain accounts is declared in plain language. When the Territory is not required to pay the same, we find in the laws the following clauses: "At the expense of the county." Cod. Sts. 438, § 27; 501, § 1. "At (the) expense of the Federal government." Cod. Sts. 652. "At his own expense. Cod. Sts. 553, § 8. The clause, "at the public expense," has the same legal effect as the words "at the expense of the Territory" in the statute providing that the office of the Territorial treasurer shall be furnished with certain articles, and that providing that the reporter shall print and bind certain reports. Cod. Sts. 384, § 16; 637, § 3. The legislative assembly designates the printing required by the Territorial auditor and treasurer for their respective offices, "public printing," and provides for its payment by the Territory. Cod. Sts., ch. 51. The word "Territorial" is used as a synonym for "public" in the following section of the act concerning "common schools:" "All printing or binding required under this act shall be executed in the form and manner and at the prices of other Territorial printing, and shall be paid for in like manner, out of the general fund of the Territory." Cod. Sts. 634, § 62. The word "public" has the same meaning as "Territorial" in the section which authorizes the Territorial auditor to prosecute "delinquent collectors of the Territorial revenue" and "persons being in possession of the public funds, money or property;" Cod. Sts. 381, § 4; and in that which

authorizes this officer to make report " of the public revenue and expenditures of the Territory." Cod. Sts. 382, § 8.

The act " in relation to brands and marks" (Cod. Sts., ch. 64), creates a Territorial office and affects the whole Territory, and the pamphlet referred to has been printed and published for the bene-fit of the body politic. Therefore, the law provides that what is done for the welfare of all the people shall be paid for by the public or Territorial treasury. The legislative assembly has acted upon a rightful subject of legislation and " expressly " author-ized a claim against the Territory. What is the power of the general recorder ? In *Randall* v. *Yuba Co.*, 14 Cal. 219, the supervisors of the county contracted with one party to print the delinquent tax list, and the tax collector, an officer of the county, contracted with another party to do the same work. The statutes of California required the tax collector to complete and publish this list, and collect in addition to the taxes certain sums which are to be paid to the county, " for the cost it may incur for printing the list." The court held that the collector was author-ized to make the contract for this printing, and that the county was bound by the reasonable exercise of his agency and must pay the price agreed upon. This case was affirmed in *Keller* v. *Hyde*, 20 Cal. 593. The court held that the county treasurer could not pay a warrant which had been allowed by the supervisors on a demand for printing the delinquent tax list, under a contract made by the supervisors. Other authorities support the proposition that an officer, who is empowered to publish this list, can make contracts for the performance of the work with any party and fix the price of the same, which must be paid by the county. *Com-missioners* v. *Kierolf*, 14 Ind. 284 ; *Beal* v. *Supervisors*, 13 Wis. 500. We are satisfied that the general recorder of marks and brands has been authorized by the statute, *supra*, to do any act necessary to secure the printing of said list of brands and marks at the Territorial expense. He can also fix the price thereof, and his action cannot be controlled by the Territorial auditor, or any other officer. There is no controversy relating to the conduct of the general recorder in making the contract with the respondents, and the Territory is bound by the reasonable exercise of his au-thority therein. The amount claimed by the respondents is not in

dispute, and it is evident that the Territory owed the same when this proceeding was commenced.

What was the remedy of the respondents? They cannot enforce their claim by an action against the Territory. This doctrine was announced in *Langford* v. *King*, 1 Mon. 38, and Mr. Justice KNOWLES said: "We hold, therefore, that unless permitted by some law of this Territory, or of the general government, no citizen of this Territory can sue it. There is no law of this Territory or act of congress permitting it. There is, then, no legal power to enforce Territorial contracts. In other words, there is no obligation to Territorial contracts. They rest simply upon the good faith of the Territory." In *Board of Liquidation* v. *McComb*, 92 S. C. 541, the court says: "A State, without its consent, cannot be sued by an individual."

What was the duty of the appellant under the facts which have been specified? The Territorial auditor "shall audit all claims against the treasury," and make to the legislative assembly "a full detailed statement of all expenditures, claims and demands by him audited and allowed," and "give separately the items and claims of each and all persons in whose favor he has audited any demand, and under what law allowed, and the date of the allowance." Cod. Sts. 381, § 5; 382, § 8. He "shall issue no warrants drawn upon the Territorial treasurer in favor of any person, without express authority of law." Cod. Sts. 381, § 1. He shall issue such warrants "in favor of all persons to whom the legislative assembly of the Territory may direct," and "shall be deemed guilty of a misdemeanor," if he issues a warrant contrary to law. Cod. Sts. 477, § 1; 478, §§ 9, 10.

We are called upon to define the duty of the appellant under the statutes and pleadings. The answer alleges that the appellant has no jurisdiction to determine the amount to which the respondents are entitled. In other words, he asserts that he has no discretion to exercise in ascertaining this amount. This position was not controverted in the court below and the parties and court assumed that it was sound. But the appellant's brief contains authorities which are cited to maintain the proposition that the appellant was empowered to use his discretion in auditing and allowing the claim of the respondents, and that the court could not

govern this discretion by the writ of mandate. These questions cannot be raised by the appellant at this time, and we express no opinion regarding them. The appellant cannot obtain a remedy in this court by upholding legal principles, which are in conflict with his answer and were not presented in the court below. He must confine himself in this court to objections which were " specifically taken at the trial." *Clarke* v. *Huber*, 25 Cal. 593 ; *Stoddard* v. *Treadwell*, 29 id. 282. In *Bradbury* v. *Cronise*, 46 id. 288, the court held that a certain averment in the complaint must be deemed to have been admitted by the answer, and that " it was not possible for the defendant to controvert " it at the trial, or raise the question on the appeal. A finding by a court or jury, which is inconsistent with the pleadings, must be disregarded. *Tevis* v. *Hicks*, 41 Cal. 127 ; *Bradbury* v. *Cronise, supra.*

Another ground of defense is that the statute does not fix the amount which the respondents should receive for their services. There is no foundation to this suggestion. There is no law of the Territory which restricts the right of the auditor to issue warrants for sums that have been specified in the statutes. We might overrule the objection by saying that the amount of the respondents' account is not disputed, and hence it is immaterial. We have also seen that the general recorder of marks and brands has been clothed with ample power to determine the compensation for the respondents' services.

What has been the action of the Territorial auditor in drawing warrants for the payment of claims against the Territory? The practical construction given to an act by the public officers of a State " is not to be overlooked, and perhaps should be regarded as decisive in a case of doubt or where the error is not plain." *Union I. Co.* v. *Hoge*, 21 How. (U. S.) 66 ; Sedgw. Stat. & Const. Law (2d ed.), 227. The general understanding of a law, and a constant practice under it for a long period by the officers who were authorized to execute it, which have not been questioned by any suit in the courts, ought to be very strong, if not conclusive evidence of its true meaning and application. *Scanlan* v. *Childs*, 33 Wis. 663. Where infinite mischief would ensue, if the court, in the construction of a statute, should adopt a different rule from that which has long been established, the construction which would

otherwise be put upon the act will not be enforced; and courts will accept the construction which is universally received and has long been acted on. *Van Loon* v. *Lyon,* 4 Daly (N. Y.), 149. The contemporaneous construction of a statute by the legislature is of high authority. *Philadelphia R. Co.* v. *Catawissa R. Co.,* 53 Penn. St. 60. We can refer to the history of the Territory to ascertain the proper interpretation of a law. *Carpenter* v. *Rodgers,* 1 Mon. 90. An examination of the financial legislation of Montana shows that the office of Territorial auditor has existed since the session of the first legislative assembly in 1864–5. The legislative assembly has rarely passed laws making appropriations of definite sums for specific objects. " By a specific appropriation we understand an act by which a named sum of money has been set apart in the treasury and devoted to the payment of a particular claim or demand." *Stratton* v. *Green,* 45 Cal. 151. A majority of the warrants which have been drawn upon the Territorial treasurer by the auditor has been issued in the settlement of claims when there was no statute which prescribed the amount that should be paid. This practical construction of the laws by this officer has been acquiesced in and sanctioned by every Territorial officer and the legislative assembly. The authority of the auditor to draw warrants for the payment of claims against the Territory which had their origin in statutes that did not set apart in the treasury " a named sum of money " therefor, has not been questioned until this action was commenced. This officer has drawn many warrants upon the treasury under the following section. The auditor " shall furnish his office with all needful blanks, maps, books, stationery, fuel and cases for books, etc." Cod. Sts. 383, § 10. No law can be cited which declares that these articles shall be furnished at the public or Territorial expense, or fixes the amount that shall be paid for them. Yet the official reports of the auditor contain items showing that warrants have been issued in payment of these articles and some which cannot be designated accurately as " blanks, maps, books, stationery, fuel and cases for books," but might be included by "etc." The law relating to the Territorial treasurer, *supra,* provides that the necessary articles " shall be furnished at the expense of the Territory," and has received the same practical construction by the Territorial officers and been acted upon by the

people and their legislative assemblies. We could refer to other statutes and prove that the auditor has drawn warrants on the Territorial treasurer in payment of claims for articles and labor, when no price was specified. Under the foregoing authorities we must adopt the construction of the laws by the Territorial officers which has been received and acted on since the Territory was organized by congress, and therefore hold that the Territorial auditor can issue his warrant in the settlement of demands against the Territory when no sum of money is stated in the statute.

The appellant contends that he cannot draw a warrant upon the Territorial treasurer unless the law contains the clause, " the auditor is hereby authorized and required to draw his warrant on the Territorial treasurer in favor of —— for —— dollars," or words having the same meaning. This expression does not appear in the statute relating to marks and brands, and it is insisted that the appellant cannot issue a warrant in favor of the respondents, and has no " express authority of law " to act in this matter. The practical construction of the statutes by the appellant and his predecessors in office is opposed to this argument, but the appellant has not waived his right to be heard thereon. There is no such clause in the above statutes, which provide for the supply of certain articles for the offices of the Territorial auditor and treasurer. The authorities which have been referred to are applicable to this proposition of the appellant, which has never been supported in the courts of this Territory until this action was brought.

The laws which regulate the payment of claims against the Territory are not uniform in their phraseology, but the intention of the legislators is clear and can be executed by the appellant. The section relating to the printing for the superintendent of public instruction, *supra*, provides that it shall be paid for, like " other Territorial printing," " out of the general fund of the Territory." At the time of the passage of this act there were four Territorial officers that required printing to be done for their respective offices, the auditor, treasurer, recorder of marks and brands, and superintendent of public instruction. We know of no statute which requires any part of this printing to be paid for " out of the general fund of the Territory," except that which has been mentioned. The contract for the printing, which was authorized by

law for the auditor and treasurer, was awarded to the lowest bidder, and the auditor was empowered to draw a warrant upon the Territorial treasurer for its payment. Cod. Sts., ch. 51. The printing for the general recorder forms the subject of this action. While our attention has not been called to any statute which creates "the general fund of the Territory," we think that an examination of the following laws will aid us in reaching a correct conclusion. The salaries of the Territorial auditor, treasurer and superintendent of public instruction, "shall be paid quarterly out of the Territorial treasury." Cod. Sts. 383, § 12; 384, § 19; 620, § 4. Subsequently the laws were amended and these salaries were "payable quarterly by warrants drawn on the Territorial treasury." Sts. Ex. Sess. 121, §§ 1, 3. At the following session the statutes were amended so that the salaries of the auditor and treasurer "shall be paid quarterly out of the Territorial treasury by warrant on the general fund." Sts. 8th Sess. 79, §§ 1, 2. The salary of the superintendent of public instruction "shall be paid quarterly out of the Territorial treasury." Sts. 8th Sess. 117, § 4. The traveling expenses of this officer "shall be paid out of any funds in the treasury not otherwise appropriated." Cod. Sts. 620, § 3; Sts. Ex. Sess. 121, § 4; Sts. 8th Sess. 117, § 3. We do not find in these statutes any clause which requires the auditor to issue his warrant for the amounts of said salaries, or expenses, or articles. But the appellant and his predecessors in office have drawn such warrants from the organization of the Territory to the present time, and after the bringing of this action. If this argument of the appellant is sound a large portion of the indebtedness of the Territory has been incurred illegally, and the appellant has been guilty of many misdemeanors in issuing warrants contrary to law. "Infinite mischief" would ensue if we upheld this construction of the statute.

Certain expenses of the superintendent of public instruction "shall be paid out of any fund in the treasury not otherwise appropriated." Cod. Sts. 620, § 5; Sts. 8th Sess. 117, § 5. The auditor is authorized to issue his warrant for the same. When this section was amended the provision relating to the auditor was omitted. Sts. Ex. Sess. 121, § 5. If we accept the proposition of the appellant these expenses would be a proper charge

against the Territory in certain years, but would be without any legal basis in other years.

How shall we construe these and similar laws ? The legislative assembly has given the rule of interpretation: "All general provisions, terms, phrases, and expressions used in any statute shall be liberally construed in order that the true intent and meaning of the legislative assembly may be fully carried out." Cod. Sts. 390, § 3. "The form of the warrants of the auditor drawn on the treasurer for the payment of money shall be  *  *  *  out of any money in the treasury not otherwise appropriated." Cod. Sts. 477, § 4. What is the "true intent" of the "general provisions" in the statutes which have been referred to ? The law which prescribes the form of the warrant is directory. *Young* v. *Camden Co.*, 19 Mo. 309. A warrant for the payment of a certain sum "out of money in the treasury not otherwise appropriated," has been held to mean that the payment should be made out of money not appropriated to special purposes. *Campbell* v. *Polk*, 3 Iowa, 467. All the warrants, which are drawn by the Territorial auditor, are of this character and must be paid in the order in which they are presented for payment by the Territorial treasurer when there are funds in the treasury for this purpose. Cod. Sts. 383, § 14 ; 384, § 15. The technical special appropriation of money which has been made by the legislative assembly is that which requires the Territorial treasurer to set aside certain money in the treasury for the payment of interest and as a "sinking fund." Cod. Sts. 580, § 11 ; Sts. 8th Sess. 39, § 1 ; Sts. 9th Sess. 190, § 7. The remainder of the money in the treasury for Territorial purposes is generally applicable to the payment of the warrants which have been issued by the auditor. We have observed that the provisions in the acts of the legislative assembly respecting this fund are not uniform, but the intention is clear and the statutes in this respect are directory. The Territorial auditor is the only officer that is authorized to draw a warrant upon the Territorial treasurer in payment of demands against the Territory, and the warrants are payable out of the same fund. Different words have been used to express only one meaning — the payment by the Territory of claims against it through the proper officers. The general clauses, " at the expense of the Territory," " at the public

expense," "out of the general fund of the Territory," "out of the Territorial treasury," "funds in the treasury not otherwise appropriated," "by warrant on the general fund," "by warrants drawn on the Territorial treasury," etc., which appear in the statutes that have been commented upon, are synonymous and refer to the mode of paying demands against the Territory which have been expressly authorized by the legislative assembly. It is not essential to define in every law which creates a Territorial liability, the duty of the auditor when the intention of the legislators is unmistakable without it.

The printing in controversy has been executed " at the public expense," and is a part of the " other Territorial printing, and shall be paid for in like manner, out of the general fund of the Territory." Cod. Sts. 634, § 62. What is the "manner" of this payment ? " The Territorial auditor is authorized to draw his warrant or warrants upon the Territorial treasurer for the payment of " the chief portion of the " other Territorial printing." Cod. Sts. 537, § 5. The appellant has interpreted similar statutes " in like manner." Under what law does the appellant draw warrants for his salary ? " The Territorial auditor shall receive a salary \* \* \* to be paid in the same manner as the treasurer is paid." Sts. 8th Sess. 80, § 2. The word " manner " has the same meaning in these statutes. In what " manner " is the treasurer paid ? " The Territorial treasurer shall receive a salary \* \* \* which shall be paid quarterly, out of the Territorial treasury, by warrant on the general fund." Sts. 8th Sess. 79, § 1. Under these provisions, the appellant, without any difficulty, discovers " express authority of law " for drawing warrants for his salary. We think that the claim of the respondents should be paid in " the same manner " as the appellant is paid.

It appears that the account of the respondents has been regularly created by a statute of the Territory ; that the amount of the same is not disputed; that the appellant has no discretion to exercise in this proceeding; that this account must be paid out of the general fund of the Territory ; and that the appellant is the only officer that is authorized to draw a warrant upon this fund. " When a plain official duty, requiring no exercise of discretion, is to be performed, and performance is refused, any person who

will sustain peasonal injury by such refusal may have a *mandamus* to compel its performance. *Board of Liquidation* v. *McComb, supra.* The provisions of the Civil Practice Act relating to the writ of mandate are consistent with this doctrine. Civ. Pr. Act, tit. 12, ch. 2. " It is not by the office of the person to whom the writ is directed, but the nature of the thing to be done, that the propriety or impropriety of issuing a *mandamus* is to be determined." *Marbury* v. *Madison,* 1 Cranch, 170. The appellant refused to perform a plain duty and draw a warrant on the Territorial treasurer for the amount of the respondent's account, and the court below properly issued the writ of mandate.

*Judgment affirmed.*