# WHEELING.

LAIDLEY *v.* KLINE'S ADM'R *et al.*

Submitted September 13, 1883—Decided March 22, 1884.

1. A bill filed by a single creditor against the administrator and heirs of a decedent to subject the real estate descended to the heirs to the payment of his claim, although not in form a creditors' bill, will become a creditors' suit from the time the court makes an order referring the cause to a commissioner to convene the creditors by publication and report the debts of the decedent, and from that time the statute of limitations will cease to run against any and all creditors of the estate of the decedent, whether formal parties to the suit or not.   (p. 570.)

2. In such suit an order of reference operates as a suspension of all other suits against the estate of the decedent; and such order may be made in the first cause ready for hearing, although not the first suit brought. If a creditor, with a knowledge that such order has been made in another suit, brings a separate suit for his own claim, he will be compelled to pay the costs of his suit.   (p. 571.)

3. When there is any ambiguity or uncertainty as to the meaning and effect of a decree of this Court in a cause in which it reverses the decree of the inferior court and remands the cause for further proceedings to be had in accordance with the principles settled in the written opinion of this Court, it is proper for such inferior court, or this Court, on a subsequent appeal in the cause, to examine the said written opinion in order to ascertain the true meaning and effect of the decree of reversal and mandate of this Court.   (p. 572.)

4. The lien of a judgment ceases, and no suit can be brought in a court of equity to enforce it, when the right to sue out execution on the judgment or to revive it by *scire facias*, is barred by the statute of limitations.   (p. 574.)

5. Under the provisions of the 11th and 12th sections of chapter 139 of the Code a judgment may be revived by *scire facias* against the personal representative of the judgment-debtor within ten

years from the return day of the last execution issued thereon, although that time may be more than ten years after the date of the judgment; provided such revival be made within five years from the date of the qualification of such representative. (p. 574.)

The facts of the case are stated in the opinion of the Court.

*T. B. Swann, J. M. Payne* and *J. M. Laidley* for appellants.

*Smith & Knight* for appellees.

SNYDER, JUDGE:

At August rules, 1870, James M. Laidley filed his bill in the circuit court of Kanawha county against the administratrix, widow and heirs of Daniel H. Kline, deceased, and others to settle the administration accounts of the administratrix, ascertain the debts and their priorities and subject the estate of said Kline, real and personal, to the payment of the plaintiff's and other debts due therefrom. The plaintiff alleges that he holds two judgments, the one recovered against said Kline in his lifetime and the other against his administratrix and certain simple contract claims due from said estate to him. All the defendants, except Elizabeth Kline, the widow and administratrix, answered the bill. The heirs by their answer denied the validity and justice of the alleged judgments and claims set up in the bill. On April 15, 1871, the court by its order of that date referred the cause to Commissioner Kenna with directions to him to ascertain and report all the unsatisfied judgments and other debts against the estate of said Kline, (treating the plaintiff's judgment against the administratrix as *prima facie* evidence only of its correctness,) also the personal estate in the hands of the administratrix and the real estate of which said Kline died seized, with the liens thereon and their priorities, and instructing the commissioner before executing the order of reference to give notice of the time and place of taking the accounts by publication in a newspaper published in the county and requiring the clerk to convene the creditors of said Kline by notice published in the manner prescribed by the statute in such cases.

The notice required by the said order was given and the

commissioner in pursuance thereof made and filed his report. Among the judgments reported were the following in favor of the persons named against the said D. H. Kline:   Grief Miller for one hundred and seventy-five dollars; H. W. Reynolds for one hundred and fifty-four dollars; Truax & Baldwin for three hundred and sixty-two dollars and fifty cents; A. M. Smith for one hundred and thirty-one dollars and ninety-three cents; and balance to Hedrick, Fitzhugh and Laidly, commissioners, for two thousand and eighty-seven dollars and sixty-three cents, all of which were recovered against Kline in his lifetime.   He also reported two judgments one for three hundred and thirty-nine dollars and thirty cents and the other for one thousand two hundred and ninety-six dollars and ninety-five cents recovered by the plaintiff against the administratrix of Kline.

This report was excepted to and by an order entered July 26, 1872, the court, without passing upon the exceptions, referred the report and the cause to Commissioner Gillison to report upon the matters required by said order of April 15, 1871.   Commissioner Gillison made and filed his report.   He also reported all the above mentioned judgments.   The defendants excepted to this report, but the court by its decree of November 9, 1872, overruled the exceptions, confirmed the report and ordered the real estate of Kline to be sold to pay the debts reported by the commissioner in said report.   The administratrix and heirs appealed from said orders and decrees, and this Court by its decree pronounced February 23, 1875, reversed all of them and remanded the cause to the circuit court for further proceedings in accordance with the principles settled in the opinion of this Court—8 W. Va. 218.

By decree of January 26, 1876, the circuit court referred the cause to a commissioner to report an account showing the real and personal estate of which the said Kline died possessed, the assets in the hands of the administratrix and a list of all the unsatisfied judgments and other debts against the decedent, with their amounts and priorities, first giving notice by publication in a newspaper, &c.   The commissioner made and filed his report, which upon exceptions thereto, was recommitted to him by decree of January 10, 1878, and

he then made his final report which was filed in the cause December 12, 1878. Among other matters the commissioner reported as valid and subsisting liens against the real estate of the said Kline the following judgments rendered against him in his lifetime:

1. A judgment in favor of A. M. Smith, rendered by the circuit court of Kanawha county at the May term 1857, for one hundred and thirty-one dollars and ninety-three cents, on which execution issued July 20, 1857, forthcoming bond taken, forfeited and award of execution thereon at the October term 1857; another execution December 10, 1857, and the last execution issued March 2, 1866, returnable to May rules 1866. The said Kline died intestate in 1868, and at the October term 1870, said judgment was revived by *scire facias* against his administratrix. On this revived judgment execution issued Nov. 15, 1870, returnable to February rules 1871.

2. A judgment in favor of Grief Miller by the county court of said county at the February term 1858, for one hundred and seventy-five dollars, subject to credit of thirty-four dollars and forty-six cents paid August 20, 1867. The first execution on this judgment issued March 10, 1858, and the last August 21, 1867.

3. A judgment in favor of C. Hedrick, N. Fitzhugh and J. M. Laidly, commissioners by same court at the spring (May) term 1860, for four thousand two hundred and thirty-three dollars and thirty-three cents, on which execution issued July 14, 1860, returnable to October rules 1860. At the June term 1872, this judgment was revived by *scire facias* against the administratrix for three thousand and sixty-nine dollars and eighty-five cents with interest from July 3, 1872, and execution issued thereon September 3, 1872. This last judgment on *scire facias* was for the balance due on the original judgment after deducting therefrom the proceeds of sale of the English lands.

The following the commissioner reported as barred by the statute of limitations:

1. A judgment in favor of H. W. Reynolds by same court at the May term 1858 for one hundred and fifty-four dollars on which executions issued July 16, 1858, and August 5, 1865, the last returnable to November rules 1865.

2. A judgment in favor of Truax & Baldwin by the county court of said county at the August term 1858, for three hundred and sixty-two dollars and fifty cents, on which execution issued August 24, 1858, returnable to November rules 1858.

The following claims filed before him in favor of the plaintiff are reported by the commissioner as rejected;

1. A note dated September 1, 1859, for three hundred dollars payable at five months.

2. A note of same date for same amount payable at eight months.

3. An assignment of judgment against Warth & English for two hundred and forty-nine dollars dated June 21, 1855.

4. An assignment of judgment against same for three hundred and eighty-seven dollars and fifty cents dated August 10, 1855.

5. Contract, not under seal, to retain fee and nine hundred and fifty-four dollars out of debt, due Kline from Warth & English secured by trust-deed, when collected, dated June 31, 1855.

6. An open account with charges running from 1851 to 1854, on which a judgment was rendered, in 1870, for one thousand two hundred and ninety-six dollars and ninety-five cents against the administratrix of Kline.

The heirs of D. H. Kline excepted to so much of the commissioner's report as allows the aforesaid judgments of A. M. Smith, Grief Miller and Hedrick, Fitzhugh and Laidly, commissioners, on the ground that said judgments are barred by the statute of limitations and because the last mentioned judgment is founded on a bond given by N. English with Kline as his surety for land sold under a decree of court and that said commissioners subsequently re-sold the land without notice to Kline and he was thereby released and discharged. II. W. Reynolds and Truax & Baldwin excepted because the report disallowed their respective judgments. The plaintiff excepted because the commissioner omitted to report the judgment in favor of Cochran and also because he rejected and did not report as liens against Kline's estate all his judgments against the administratrix as they were not barred when the first order of reference was made in the cause.

On July 13, 1881, the court entered a decree sustaining the exceptions of Kline's heirs and rejecting the judgments of Smith, Miller and Hedrick, Fitzhugh and Laidley, commissioners, and overruling the exceptions of Reynolds, Truax & Baldwin and the plaintiff, and by another decree, made July 5, 1883, the court confirmed the report of the commissioner as corrected and modified by the said decree of July 13, 1881, and ordered the payment of the debts so reported and confirmed.   From this and the decree of July 13, 1881, the plaintiff, Hedrick, Fitzhugh and Laidly, commissioners, H. W. Reynolds and the administrators of A. M. Smith and Grief Miller appealed to this Court.

The appellants, severally, assign as error, the disallowance and rejection of their respective judgments, and insist that neither of them were barred by the statute of limitations.

The appellees, Kline's heirs, contend that there is no error in the said decrees, because each and all of said judgments were barred by the statute of limitations; and to sustain their position they assert two propositions: *First*, That the orders of reference made in this cause on April 15, 1871, and July 26, 1872, having been reversed and set aside by the decree of this Court on the former appeal, and this cause not having been in its inception a creditors' suit, the statute of limitations did not cease to run against said judgments until January 26, 1876, the date at which the first legal order of reference was made convening the creditors of Kline; and *Second*, That by the provisions of the eleventh and twelfth sections of chapter 139 of the Code of this State, no action or *scire facias* can be brought upon a judgment where there has been a change of parties by death or otherwise, after ten years from its date.

1. Upon the first proposition, it is properly conceded that a bill filed by a single creditor to enforce the payment of his debt against the administrator and heirs of a decedent, although not in form a creditors' bill, will become such from the time the court makes an order referring the cause to a commissioner to take an account of the debts of the decedent and that the statute of limitations will cease to run against any creditor of the decedent, whether he is a formal party to the suit or not, from the date of such order of reference—

*Woodyard* v. *Polsley*, 14 W. Va. 211; *Sterndale* v. *Hankinson*, · 1 Sim. 393. And it is well settled that an order of reference in one such suit operates a suspension of all other pending suits, and this order may be made in the first cause ready for hearing, although it is not the first suit brought; and if a creditor with knowledge that there has been a decree for an account in another creditor's suit, brings a separate suit for his own claim he will be compelled to pay the costs—*Kent* v. *Cloyd*, 30 Grat. 555; *Stephenson* v. *Taveners*, 9 Grat. 398; section 10 chapter 87 Code p. 507.

The reason of the rule, which arrests the running of the statute of limitations from the time an order of reference is made, is that by such order the court takes upon itself the administration of the assets of the decedent, and the assets being thus in the hands and under the control of the court, it could restrain other parties from proceeding afterwards by separate suits to enforce satisfaction of their claims out of said assets—*Harvey* v. *Steptoe*, 17 Gratt. 289, 304. If every creditor were allowed to bring a separate suit for the payment of his claim, it would be impossible to do justice to all the creditors. The claims can only be adjusted and their priorities determined by comparison of their dates and dignities and this cannot be done unless they are all brought together in the same suit. Therefore, the rule is not founded alone upon the economy of costs and the orderly conduct and convenience of the court and parties, but upon absolute necessity which makes it imperative that the court that first acquires jurisdiction over the assets by an order of reference in one suit should have the right and power to compel all the creditors to come into that suit with their claims and to restrain them from bringing or prosecuting separate suits against assets which have already been taken charge of in another suit by the court. Such is the recognized and established practice of the courts of this State—*Marling* v. *Robrecht*, 13 W. Va. 440; *Neely* v. *Jones* 16 *Id.* 625; *Arnold* v. *Casner*, 22 *Id.* 444.

According to this rule it necessarily follows that if the order of reference entered in this suit on April 15, 1871, was such an order as made it the duty of all the creditors of the decedent, Kline, to appear before the commissioner and file

their claims, then the statute of limitations ceased to run from that date against said claims; because they, having knowledge of that order, were thereafter barred the right to bring separate suits. This much, however, does not seem to be questioned by the counsel for Kline's heirs, but they rely entirely upon the fact that, inasmuch as said order was reversed and set aside by this Court, the creditors, not parties to the bill, stand precisely in the position they would have been if no such order had ever been made; in other words that said order was in fact and must be in all respects regarded as a nullity and the cause treated as though it had never been made. If the effect of the decree reversing said order by this Court was such as the appellees' counsel claim, that is, that it was an absolute nullity for all purposes, then their conclusion is correct. If, on the other hand, it appears from the decree of reversal and the opinion of this Court of which said decree is a part, that said order of April 15, 1871, was not held to be void for all purposes, but only in some particular which did not destroy its force as to all the creditors of the decedent, then the conclusion of appellees' counsel is not correct.

When there is any ambiguity or uncertainty as to the meaning and effect of a decree or order of this Court in a cause in which this Court reverses the decrees of the inferior court and remands it for further proceedings to be had in the inferior court "according to the principles settled by the opinion of this Court," it is not only proper but it is the duty of the court below and this Court on a subsequent appeal in the same cause to examine the opinion of the court in order to ascertain the true intent and effect of the decree and mandate of this Court. *Mason* v. *Bridge Co.*, 20 W. Va. 223, 243.

The decree of reversal in this cause ordered the cause to " be remanded to the circuit court of Kanawha county for further proceedings therein to be had according to the principles settled by this opinion." This made the opinion part of the decree and we can, therefore, look to the opinion to determine the meaning and effect intended by the decree of reversal. It will be observed that the order of reference entered in this cause on April 15, 1871, directed the commis-

sioner to treat " the judgments against the administratrix as *prima facie* evidence only of their correctness." 8 W. Va. 224. In reference to this direction the Court in the opinion says: " The plaintiff, in his bill, seems to rest his right to a recovery against the heir upon the supposed force of such judgments as evidence of the justness thereof against the legal heirs of the decedent; but, as we have seen, these judgments are not even *prima facie* evidence of the justness of the plaintiff's claims against the heirs to whom the land descended, and the circuit court *erred in directing the commissioner to treat judgments against the administratrix as prima facie evidence of their correctness against the heirs*; for that is the substance of the direction." 8 W. Va. 230–31. This is the only particular in which the said order of April 15, 1871, is declared to be erroneous. It would, therefore, have been safer and, perhaps, critically more correct, for this Court in its decree to have simply ordered that erroneous direction to be stricken from the order; but taking the opinion and the decree together such appears to be plainly the intention and effect of the reversal. And while the court did in fact by its decree reverse the whole order, we must assume from the views expressed in the opinion that such reversal was made simply as matter of convenience or by inadvertence and without any purpose to declare erroneous or void any part of said order except the part declared to be erroneous as hereinbefore stated. This conclusion is made more apparent from the fact that this Court ordered the cause to be remanded to the circuit court for further proceedings to be there had in accordance with the principles settled in the opinion. The opinion by implication if not in terms affirmed the correctness of the whole of said order except the part declared to be erroneous, and consequently by remanding with directions to proceed according to the principles settled in the opinion it in effect affirmed that part of said order not declared to be erroneous and made it the duty of the circuit court to re-enter it as thus corrected. If the court had been without jurisdiction to make said order or the order had been such as could not have been properly made in the cause, this Court would have dismissed the plaintiff's bill instead of remanding it. The reversal shows that the appel-

lants did in fact appear before the commissioner and present their claims in response to said order, but even if they had not done so, I am ot opinion that order precluded them from institututing suits on their claims after the date at which it was made; and, consequently, as to them and all other creditors of the decedent, Kline, the statute of limitations ceased to run from April 15, 1871, the date ot said order.

2. As to the second proposition of the appellees. This Court has decided, and we think correctly, that the lien of a judgment ceases, and no suit can be brought to enforce it in a court of equity when the right to sue out execution on the judgment, or to revive it by *scire facias*, is barred by the statute of limitations— *Werdenbaugh* v. *Reid*, 20 W. Va. 588; *Shipley* v. *Pew*, *infra.*

The material enquiry then is, what period of time bars the right to revive a judgment by *scire facias* against a deceased party? The answer to this involves the construction of the eleventh and twelfth sections of chapter 139 of the Code. So much of said sections as bears on this enquiry is as follows:

"11. On a judgment, execution may be issued within two years after the date thereof, or if none be so issued, the court in which the judgment was rendered may thereafter, and within ten years from the date of the judgment, upon ten days' notice to the party against whom the judgment is, order an execution to be issued thereon for such sum as remains unpaid. Where execution issues within two years as aforesaid, other executions may be issued on such judgment without notice within ten years from the return day of the last execution issued thereon on which there is no return by an officer, or which has been returned unsatisfied. And an action or *scire facias* may be brought upon a judgment on which no execution issued within the said two years, or where there has been a change of parties by death or otherwise, at any time within ten years next after the date of the judgment. But if such action or *scire facias* be against a personal representative of a decedent, it must be brought within five years from the qualification of such representative."

"12. No execution shall issue, nor any *scire facias* or action be brought on a judgment in this State, other than for the State, after the time prescribed by the preceding section,

except that in computing the time, the period mentioned in the fourth section of chapter 136, and any time during which the right to sue out execution on the judgment is suspended by the terms thereof, or by legal process, shall be omitted."

The time excluded by the said fourth section of chapter 136, is from April 17, 1861, to March 1, 1865.

The greater part of said section 11, is a transcript from the Code of Virginia and will be found in section 12 of chapter 186 of that Code. By a comparison of the two statutes it will be observed that the following provision of the said eleventh section of our Code is not found in the Virginia statute: "And an action or *scire facias* may be brought upon a *judgment on which no execution issued* within the said two years, or where there has been a change of parties by death or otherwise, at any time within ten years next after the date of the judgment." The counsel for the appellees claim that this new matter "provides for two distinct cases, separated by the disjunctive '*or.*' The one where the judgment-creditor has not sued out execution within two years, and the other where there has been a change of parties by death or otherwise, and means the same as if written, 'And an action or *scire facias* may be brought upon a judgment on which no execution issued within two years, at any time within ten years next after the date of the judgment, and an action or *scire facias* may be brought upon a judgment where there has been a change of parties by death or otherwise, at any time within ten years next after the date of the judgment.'" And the conclusion of counsel from this analysis of the statute is, that where the judgment-debtor dies the judgment cannot be revived against his personal representative in any case, if the judgment has been rendered ten years or more before the revival is asked, although the judgment may have been kept in full force, by the issuance of executions on it, up to the death of the judgment-debtor.

This construction is too abhorrent and repugnant, it seems to me, to reason, justice and common sense to be entertained for a moment if the statute is at all susceptible of a more just and reasonable interpretation. It appears to me that this new provision of our statute was intended to apply to but one class of cases. That is, it was intended to meet

only the cases of judgments on which no execution issued within two years, and has no reference whatever to judgments kept in force by issuing executions within two years and afterwards. And I am also of opinion that the next succeeding provision which declares: "But if such action or *scire facias* be against a personal representative of a decedent, it must be brought within five years from the qualification of such representative," is intended as a limitation upon both classes of judgments. Both those on which no execution has issued within two years and those on which execution did issue and were kept in force until the death of the judgment-debtor. In no event can either class of judgments be revived unless it is done within five years from the qualification of the personal representative, although in some cases it may be less. For instance, if it be a judgment on which no exection has issued and the personal representative shall qualify eight years after the date of the judgment, then the creditor will have but two years from the date of such qualification within which to revive such judgment.

In support of this construction it will be noticed that there is a very material difference between our statute and that of Virginia in the context of this last mentioned provision. In the Virginia statute it commences with the word "except" and forms a part of the preceding sentence; while in ours, the new matter forming an independent or parenthetical sentence, separates it from the former sentence corresponding with the one in the Virginia statute, and thus making a separate and distinct sentence. In ours it commences with the word "But" and forms a sentence separate from the new parenthetical provision which precedes it. This separation of the two provisions and alteration of the text indicates very distinctly to my mind that it was not intended to be a qualification merely of the new provision; that is, judgments on which no execution has issued within two years, but to all judgments mentioned in the preceding part of the section and including those which had been kept in force by issuing executions on them up to the death of the judgment-debtor. The only possible objection that I can discover to this interpretation is the word "such." It says: "But if *such* action or *scire facias*," &c. As the words "action or *scire facias*," do not

occur except in the new provision just preceding, the ordinary rules of construction would confine the word "such" to the "action or *scire facias*" mentioned in said provision, unless to do so would violate the plain intent and evident purpose of the statute. The preceding part of the statute does provide that "upon ten day's notice" the court may "order an execution to issue," &c. This is in a general sense "an action," because it is a proceeding by the court upon notice to the parties. The words "such action" may possibly have been used to embrace this proceeding. But, however this may be, I am very clearly of opinion that it was never intended by this statute to entirely defeat and destroy a judgment over ten years old, which had been kept in force by issuing executions on it regularly up to the death of the debtor, or until there was a change of parties in some other respect simply and merely by the death of the judgment debtor or some other change of the parties. Such a radical and unreasonable departure from the Virginia statute, from which this statute was mainly taken, cannot be tolerated unless it clearly appears that such was the evident and manifest intention of the Legislature—*Hughes* v. *Farrar*, 45 Me. 72; *Ryegate* v. *Wardsboro*, 30 Vt. 746; *ex parte Ellis*, 14 Cal. 222; *State* v. *Clark*, 5 Dutch. 96; *Brown* v. *Gates*, 15 W. Va. 131. Nothing, that I can discover, manifests any such intention in this statute; therefore, according to reason and the established rules of construction, I am of opinion that the said eleventh and twelfth sections of chapter 139 of our Code make no material change in the statutes of Virginia from which they were taken in regard to the limitation of the right to revive *judgments on which executions have issued* against the judgment-debtor; and that under their provisions, in the same manner as under those of Virginia, such judgment may be revived by *scire facias* against the personal representative of the judgment-debtor at any time within ten years from the return day of the last execution issued thereon, provided that when the revival is asked not more than five years have elapsed from the date of the qualification of such personal representative, although at the time of such revival more than ten years may have elapsed after the date of the judgment. And from the limitation thus prescribed there must be excluded

the period between the 17th day of April, 1861, and the 1st day of March, 1865.

Applying these principles of law to the judgments of the appellants in this cause, it is apparent that none of said judgments were barred by the statute of limitations. The order of reference of April 15, 1871, was made within less than five years from the qualification of the administratrix of the decedent, D. H. Kline, and the return day of the last execution issued on each of said judgments was less than thirteen years, ten months and fourteen days prior to the date of said order. The circuit court, therefore, by its order of July 13, 1881, erred in sustaining the exceptions of the appellees, Kline's heirs, to the commissioner's report as to the judgments of A. M. Smith, Grief Miller and Hedrick, Fitzhugh and Laidly, commissioners, and also in overruling the exceptions of H. W. Reynolds and Truax & Baldwin to said report. The said court likewise erred in its decree of July 5, 1883, in confirming the commissioner's report as modified by said order of July 13, 1881. The court did not err in overruling the plaintiff's exception to said report because it did not report his judgments against the administratrix of Kline as liens against the real estate. This Court on the former appeal in this cause decided that said judgments were not liens on the real estate, nor even *prima facie* evidence against the heirs of Kline. 8 W. Va. 218. That matter is, therefore, *res judicata*, and since that decision this Court has repeatedly affirmed the doctrine therein announced—*Custer* v. *Custer*, 16 W. Va. 113; *Bank* v. *Good*, 21 *Id.* 455.

Although both the plaintiff and counsel for Kline's heirs have argued the question as to the validity or the invalidity of the plaintiff's simple contract-debts rejected by the report of the commissioner, we cannot look into those claims as the plaintiff did not except to the report on account of said rejection—*Ward* v. *Ward*, 21 W. Va. 262. But if we could consider those matters it would not avail the plaintiff for said claims, if not paid long before the death of Kline or otherwise settled by him, were plainly barred by the statute of limitations long before his bill was filed in this cause.

I have not deemed it necessary to consider the effect of the revival of a judgment, recovered in the lifetime of the debtor,

against his administrator—*Deneale* v. *Stump*, 8 Pet. 528. The original judgments in this cause are not barred regardless of the revival and therefore the question does not arise as to the effect of the revival.

The second ground of the appellees' exception to the commissioner's report in reference to the judgment of Hedrick, Fitzhugh and Laidly, commissioners, is not supported by any legal evidence in the record and consequently cannot be sustained.

For the foregoing reasons I am of opinion that the aforesaid order of July 13, 1881, and decree of July 5, 1883, should be reversed, with costs to the appellants against the appellees, the heirs of D. H. Kline, deceased; and this Court proceeding to render such decree as said court should have rendered, it is ordered that all the exceptions of the defendants, Kline's heirs, and the plaintiff, to the report of commissioner Fontaine be overruled, and those of H. W. Reynolds and Truax & Baldwin be sustained. And this cause is remanded to the circuit court for further proceedings in accordance with the principles announced in this opinion.

REVERSED.    REMANDED.