G. W. JOHNSON, *Sheriff*, VS. EVAN D. CAMERON, *as Territorial Auditor*.

1. AGREED CASE—Under § 4419, Statutes of 1893, parties to a question, which might be the subject of a civil action, may, without action, agree upon a case containing the facts upon which the controversy depends, and present a submission of the same to any court, which

would have jurisdiction if an action had been brought. But it must appear, by affidavit, that the controversy is real, and the proceedings in good faith to determine the rights of the parties. The court shall thereupon hear and determine the case, and render judgment as if an action were pending.

2. APPROPRIATION—*Insane—Limitation*—Section 274, Statutes of 1893, provides for an appropriation of $15,000 for the commitment and care of the insane. The legislative assembly did not intend, by such appropriation, to modify the provisions of § 5935, Statutes of 1893, for the auditing of all accounts against the Territory of Oklahoma, or § 3012, Statutes of 1893, providing that the compensation and expenses of the sheriff, incurred in the care of the insane, shall be paid out of the territorial treasury, in the usual manner, when such appropriation is exhausted.

3. DUTY OF AUDITOR—*Treasurer*—When such accounts are presented to the auditor, as required by law, it is his duty to audit them and issue a warrant upon the territorial treasurer, in the usual manner, and if there are no funds in the possession of such treasurer, it is his duty, under § 5955, Statutes of 1893, to endorse thereon the date of its presentation, with his signature thereto

*Original Proceeding in Mandamus.*

Action instituted by *G. W. Johnson*, sheriff of O county, *vs. Evan D. Cameron*, as auditor of the Territory of Oklahoma.

Peremptory writ ordered.

*R. E. Wood* for plaintiff.

*C. A. Galbraith, Attorney General*, for defendant.

The opinion of the court was delivered by

SCOTT, J.: This is an original proceeding in *mandamus*, filed in this court on the 18th day of June, 1894, by G. W. Johnson, as sheriff of O county, Territory of Oklahoma, vs. Evan D. Cameron, auditor of Oklahoma Territory, upon an agreed statement of facts, which reads as follows:

"In pursuance and by virtue of § 4419, chap. 66, of the Oklahoma statutes, providing for submitting a question which might be the subject of a civil action

to a court having jurisdiction thereof, the parties above named come now and stipulate and agree that the facts in this controversy are as set forth in the petition and application for peremptory writ of mandate, filed herein, except that the reason for the defendant's not auditing said account not being stated in said application, it is agreed that the defendant refuses to audit said accounts for the reason that there was not, at the time they were presented, nor is not now, any money in the treasury with which to pay said warrants, and for the further reason that the appropriation made by the territorial legislature for transportation and care of the insane for the years 1893 and 1894 was, at the time said accounts were presented, entirely exhausted and covered by warrants previously issued against said appropriation.

"The decision of the court is respectfully asked on the question of the right of the defendant, as auditor of the territory, to audit accounts that are proper claims against the territory after the appropriation made for the purpose of paying said accounts has been exhausted."

The petition for the writ of *mandamus* reads:

"Comes now the said plaintiff and respectfully represents and shows to the court:

"That he is now, and was at all times hereinafter mentioned, the duly qualfied and acting sheriff of O county, Territory of Oklahoma.

"That the said defendant is now, and was at the times hereinafter specified, the duly qualified and act-auditor of Oklahoma Territory.

"That it is the duty of said defendant, under the laws of said territory, to audit all claims and accounts against the territory, when properly presented and verified, and to issue warrants on the territorial treasurer for the amounts thereof.

"That on the 1st day of May, 1894, in executing a warrant duly and regularly issued, directed and delivered to the plaintiff as sheriff of O county, the plaintiff conducted one Wm. E. Miller, duly adjudged insane, to the insane hospital at Jacksonville, Ill., as directed in said warrant, and delivered said Wm. E.

Miller to the superintendent of said hospital, whose receipt for said patient was duly endorsed on said warrant; that in executing the warrant as aforesaid, the plaintiff incurred expense in railroad fare, etc., amounting to $130.85; that said expenses are a proper charge against said territory, and said Territory of Oklahoma is liable to plaintiff for the same; that plaintiff made out an itemized statement of his account in due form, a copy of which is hereto attached, marked 'Exhibit A', and made a part hereof, and presented to the defendant, as auditor, and requested that the same be audited, and a warrant issued to him on the treasurer for the same; that the defendant refused and still refuses to audit said account and to issue a warrant to plaintiff therefor.

"That on the 12th day of May, 1894, the plaintiff, in executing a warrant duly directed and delivered to him as sheriff of O county, conducted Elizabeth Reynolds, an insane patient, to the hospital at Jacksonville, Ill., and delivered said patient to the superintendent of said hospital, as in said warrant directed, and in so doing incurred an expense for railroad fare, board, etc., amounting to $128.25, an itemized statement of said account is hereto attached, marked 'Exhibit B' and made a part hereof; that said expense is a proper charge against the Territory of Oklahoma; that the plaintiff presented said accounts to the defendant, as auditor, and requested that he audit said accounts and issue a warrant to plaintiff on the territorial treasurer for the amount thereof; that the defendant refused and still refuses so to do.

"That the plaintiff paid out the greater amount of said money in cash, and expected said account to be properly audited and warrant issued therefor, so that the same could be converted into money, and that said accounts were not audited and warrants issued therefor, is the source of much embarrassment to him in the proper conduct of his office; that he has no adequate remedy at law, and that unless the writ issue as hereinafter prayed for, great and irreparable wrong will be done him.

"Wherefore, plaintiff prays that a peremptory writ of *mandamus* issue forthwith, directed to the defend-

ant, commanding him to audit the said accounts and issue and deliver to plaintiff warrants on the territorial treasurer for the respective amounts thereof, as in duty dound he will ever pray."

Attached to this petition are the vouchers, as required by law, marked respectively, exhibits "A" and "B". The case is submitted in conformity to statutory provisions with reference to the submission of agreed cases, and, under the agreed statement thus filed, the case is presented for determination upon the question as to whether the peremptory writ should issue, commanding the territorial auditor to forthwith audit the said accounts, and issue and deliver to plaintiff warrants on the territorial treasurer in the respective amounts, as prayed for, in his petition.

It appears that the governor of Oklahoma, under and by virtue of § 2990, statutes of 1893, entered into a contract with a hospital for the insane at Jacksonville, Illinois, for the care of insane patints from this territory, and the sheriff, in the discharge of his duty, conveyed the patients to said hospital and incurred the expense alleged, and when he presented his account to the defendant to be audited, defendant refused to do so for the reason that the appropriation for the insane had been previously exhausted.

An act providing for the care of insane patients was passed by the legislative assembly of the Territory of Oklahoma, and took effect December 20, 1890. That act made express provision for the care of the insane and provided compensation for the payment of the officer, in whose custody they were placed, from time to time, until finally committed as required by law. The legislative assembly made provision for current expenses of the territory for the years 1893 and 1894, which act took effect March 10, 1893. (Statutes 1893, § 274.) Section 274 provides for an appropriation of $15,000 for the commitment and care of the

insane for said years 1893 and 1894, or so much of said·
sum as may be found necessary.   The territorial aud-
itor audited the accounts presented to him, as required
by law, until the sum of $15,000 so appropriated had
expired, and said fund being exhausted at the time
the plaintiff in this case presented his account, de-
fendant refused to audit and issue a warrant on the
territorial treasurer therefor.

We are now called upon to determine whether the
act of the legislative assembly, appropriating the
sum of $15,000 for the purpose named, operates as a
limitation upon the auditor in auditing and issuing
warrants upon the territorial treasurer after the ex-
piration of said fund.   Section 2990, statutes of 1893,
reads:

"The governor of the Territory of Oklahoma be,
and he is, hereby authorized to contract with any
territory or state in the United States, or with the
proper officials thereof, for the care of persons who
become insane within this territory and who are citi-
zens thereof.   Such care to be had in the insane asy-
lums of the territory or state with which such contract
may be made."

Section 2991, id., reads:

"Such contracts shall be in writing, and when exe-
cuted shall authorize persons entitled to treatment in
any insane asylum to be carried to that asylum and
there held with like force and effect as though such
asylum was within this territory."

Section 2992, id., reads:

"Until an asylum for the insane can be erected in
this territory, all patients shall be examined, held,
and their sanity determined as in this act provided.
When adjudged insane, as herein provided, the patient
shall be carried to the hospital in accordance with the
contract so made by the governor."

Section 3001, id., reads:

"On the return of the physician's certificate, the
commissioners shall, as soon as practicable, conclude

their investigations, and having done so they shall find whether the person alleged to be insane is insane; whether, if insane, a fit subject for treatment and custody in the hospital; whether the legal settlement of such person is in their county, and if not in their county, where it is, if ascertained. If they find such person is not insane, they shall order his or her discharge if in custody. If they find such person insane, and a fit subject for treatment and custody in the hospital, they shall forthwith issue their warrant and a duplicate thereof, stating such finding, with the settlement of the person, if found, and if not found, their information, if any, in regard thereto, authorizing the superintendent of the hospital to receive and keep such person as a patient therein. Such warrant and duplicate, with the finding and certificate of the physician, shall be delivered to the sheriff of the county, who shall execute the same by conveying such person to the hospital, and delivering him or her, with such duplicate and physician's certificate and finding, to the superintendent thereof. The superintendent, over his official signature, shall acknowledge such delivery on the original warrant, which the sheriff shall return to the clerk of the commissioners with his costs and expenses indorsed thereon. If neither the sheriff nor his deputy is at hand, or if both are otherwise engaged, the commissioners may appoint some other suitable person to execute the warrant in his stead, who shall take and subscribe an oath or affirmation faithfully to discharge his duty, and shall be entitled to the same fees as the sheriff. The sheriff, or any other person so appointed, may take to his aid such assistance as he may need to execute such warrant; but no female person shall thus be taken to the hospital without the attendance of some other female, or some relative of such person. The superintendent in his acknowledgement of delivery must state whether there was any such person in attendance, and give the name, or names, if any. It is, however, hereby provided that if any relative or intimate friend of the patient, who is a suitable person, shall so request, he shall have the privilege of taking and executing such warrant, in preference to the sheriff or any other person, and without taking such oath or affirmation, and

for so doing he shall be entitled to his necessary expenses, but no fees."

Section 3012, id, reads:

"The commissioners of insanity shall be allowed at the rate of two dollars per day each for all the time actually employed in the duties of their office. The judge of probate, in addition to what he is entitled to as commissioner of insanity, shall be allowed one-half as much more for making the required record entries in all cases of inquest, and of meetings of the board for any purpose, and for filing of any papers required to be filed. He shall also be allowed twenty-five cents for such notice or process given or issued under seal, as herein required. The examining physician shall be entitled to five dollars for each case examined, and mileage at the rate of ten cents per mile each way. The sheriff shall be allowed for other service than conveying a patient to the hospital and returning therefrom the same fees for like services in other cases. Witnesses shall be entitled to the same fees as witnesses in the district court. The compensation and expenses provided for above shall be allowed and paid out of the county treasury in the usual manner, except those of sheriff, which shall be paid out of the territorial treasury in the usual manner."

Section 5935, id, reads :

"All accounts or claims against the territory, which shall be by law directed to be paid out of the treasury thereof, shall be presented to the auditor, who shall examine and adjust the same, and, for the sums which shall be found due from the territory shall issue warrants payable at the territorial treasury, which shall be numbered consecutively, and each shall specify the date of its issue and the name of the person to whom payable, of each warrant, and corresponding thereto, shall be entered upon the stub for each warrant separately, and those stubs shall be carefully preserved by the auditor in his office."

Section 5937, id, reads:

"For the redemption of all warrants issued in conformity with the provisions of this chapter, the credit of the territory is hereby pledged."

Section 5955, id, reads:

"When any warrant shall be presented to the treasurer for redemption, and there shall be no funds in the treasury appropriated for that purpose, the treasurer of the territory shall endorse thereon the date of its presentation, with his signature thereto, and thereafter such warrant shall draw interest at the rate of six per cent. per annum, and whenever there shall be funds in the treasury for the redemption of warrants so presented and endorsed, the treasurer shall give notice of the fact in some newspaper published at the seat of government, and at the expiration of thirty days after the date of such notice, the interest on such warrant shall cease."

It is conceded that plaintiff's accounts are just and proper charges against the territory; that the territory is pledged by § 5937, Statutes of 1893, for their payment; that the $15,000, appropriated by the legislative assembly for the commitment and care of the insane for 1893 and 1894, was, at the time said accounts were presented, exhausted and fully covered by warrants outstanding, issued for such purpose against said fund for said period. Counsel for defendant argues that the legislative assembly, by said appropriation of fifteen thousand dollars, intended to, and did, prescribe a limitation upon the power of the territorial auditor to draw warrants against said fund, notwithstanding the apparently mandatory provision contained in § 5935, Statutes of 1893, as to his duty to audit just accounts against the territory when presented to him; and further, that while plaintiff's accounts are just and proper charges against the territory, and will necessarily be paid when the legislative assembly shall have appropriated money therefor at some future time; that not until such appropriation is made, has the territorial auditor the authority to audit the accounts and issue warrants in payment of these expenses. Counsel for defendant does not contend that there is any inhibition in either the Organic

Act or the statutes of Oklahoma, and admits in express terms that unless the appropriation by the legislative assembly for the specific purpose mentioned in § 274 of the act making appropriation for the current expenses for the territory for the years 1893 and 1894 is a limitation on the authority of the defendant to audit the accounts and issue warrants against said fund in excess of the amount of said appropriation, that the plaintiff is entitled to have his accounts audited as prayed for.

The question is thus narrowed to the single proposition as to whether the legislature, by the appropriation of $15,000 for the commitment and care of the insane for the years 1893-94, meant thereby to modify the provisions of § 5935, statutes 1893, for the auditing of all accounts against the territory, and § 3012, statutes 1893, providing that the compensation and expenses of the sheriff, incurred in the care of the insane, shall be paid out of the territorial treasury in the usual manner.

The court does not believe that the legislative assembly meant to do this. We think in this case when the accounts were presented to the auditor, he should have at once audited them and issued a warrant upon the territorial treasurer for the payment of the same in the usual manner, and if there are no funds in the possession of the territorial treasurer, .out of which said warrants can be lawfully paid, it is his duty, under § 5955, Statutes 1893, to endorse thereon the date of its presentation with his signature thereto; and, thereafter, the law provides such warrants shall draw interest at the rate of six per cent. per annum; and whenever sufficient funds have accumulated in the treasury for the redemption of the warrants so presented and endorsed, the treasurer shall give notice of the fact in some newspaper published at the seat of government to that effect and at the expiration of thirty days after

the date of such notice the interest on such warrants shall cease. These are very wise provisions of law and are made with the express intention that the wheels of government shall not be stopped when the cash on hand is exhausted, and as a guarantee of the faith and stability of the state or territory, the credit thereof is pledged for the redemption of all outstanding warrants so issued when the funds have expired.

It is not the purpose of any government to impose unnecessary burdens upon its officers in the discharge of their obligations thereto, and a liberal construction even of the statutes referred to is unnecessary when we take into consideration the fact that the law has exacted, in instances of this kind, the private funds of the sheriff in the performance of his official duty.

It is the opinion of the court that the legislative assembly did not mean to limit the payment of expenses for the care and commitment of the insane for the years 1893–94 to the sum of $15,000, but that such sum was appropriated as a sum, in the judgment of the legislature, sufficient to defray such expenses during the years named, and if insufficient, the provision of law still existed for payment of these expenses in the usual manner. It is really no concern of the auditor in this case whether the treasurer has in his hands funds or not. When funds are exhausted the treasurer's duty is plain as heretofore shown.

The authorities bearing upon this question support the view of the court as expressed. (See *Journal Publishing Co. vs. Kennedy, State Auditor*, Mont., 24 Pac. Rep. 96; *Fisk vs. Guthbert*, 2 Mont. 593; *Henderson vs. Board of County Commissioners*, etc., Ind., 28 N. E. Rep. 127).

Entertaining the views thus declared, the peremptory writ of *mandamus* will be awarded, commanding the territorial auditor to audit the accounts as pre-

sented by the plaintiff and to issue warrants in the usual manner upon the treasurer of Oklahoma Territory for the payment of the same.

By the court: It is so ordered.

All the Justices concurring.